THE STATE OF NEW JERSEY, PLAINTIFF, v. JAY A. YERKES, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

February 8, 1983.

148

*Stephen H. Monson,* Deputy Attorney General, and *Lily Oeffler,* Assistant Prosecutor, for the State (*Steven Raymond,* Burlington County Prosecutor, attorney).

*John Lee Madden* for defendant.

HAINES, A.J.S.C.

This opinion addresses the question of whether the Model 900A Breathalyzer machine was approved by the New Jersey Attorney General prior to June 21, 1982. It is written because the issue has been raised in a substantial number of pending drunk-driving appeals from various municipal courts. Other issues involved in this defendant's appeal are considered in a separate opinion.

On February 18, 1982 defendant Jay A. Yerkes was charged with drunken driving, a violation of *N.J.S.A.* 39:4–50. He was tried below and convicted, the conviction resting in part upon

the result of breathalyzer tests which showed a blood alcohol content of .14%. *N.J.S.A.* 39:4–50.1(3) states that a reading of .10% provides a presumption that the defendant was under the influence of intoxicating liquor.

At the time of the trial in the municipal court defendant stipulated that all required steps were taken with reference to the breathalyzer test and that the results would be admitted into evidence without objection. Later, defendant learned that the machine used in connection with the test was the Breathalyzer Model 900A which had not, by any specific reference, been approved by the Attorney General. *N.J.S.A.* 39:4–50.3 provides:

> Chemical analysis of the arrested person's breath, to be considered valid under the provisions of this act, shall have been performed according to methods approved by the Attorney General . . . .

Defendant, having appealed to this court, argued that the requirements of this statute had not been met and requested an opportunity to supplement the record in order to raise an objection to the admission of the breathalyzer test results.

*R.*3:23–8(a) requires a plenary trial *de novo* when "the rights of defendant were prejudiced below." It appeared to the court that the stipulation concerning the breathalyzer test had been induced by the unintentional but implied representation of the State that the Model 900A breathalyzer machine had, in fact, been approved by the Attorney General. As a result, the question of approval was not raised and was not addressed below. The question of whether the record should be supplemented by the admission of defendant's objection to the 900A machine and any evidence the State wished to present on the question of approval was therefore listed for argument. The parties then agreed that the record should be supplemented; argument was waived. A full hearing on the breathalyzer question followed. Defendant advanced his objection to the use of the test; the State presented expert testimony and numerous exhibits.

It appears that on September 14, 1966, following the procedure then required, the Attorney General filed a letter with the Secretary of State in which he said:

> ... I do hereby approve the following methods of chemical analysis of breath for determining blood alcoholic content:

> . . . .

> (b) The breathalyzer as developed and perfected by Robert F. Borkenstein.

On April 25, 1969 a second letter of approval was filed in which the Attorney General repeated this approval. On August 12, 1969 he forwarded *N.J.A.C.* 13:51 to the Division of Administrative Procedure. Subchapter C was headed, "Approved instruments as methods of chemical breath testing." *N.J.A.C.* 13:51–17 provided:

> Purpose:

> The regulations of this sub-chapter set forth the methods and instruments approved by the Attorney General for chemical analyses of an arrested person's breath.

*N.J.A.C.* 13:51–21 listed "approved methods and instruments." The list included:

> The Breathalyzer as invented by Professor Robert Borkenstein, Director of Indiana University Traffic Institute, Bloomington, Indiana.

*N.J.A.C.* 13:51, as published, repeated the language submitted by the Attorney General, except that it did not include the "purpose" language of *N.J.A.C.* 13:51–17 above.

A proposed amendment to *N.J.A.C.* 13:51 was advertised on April 19, 1982. The summary at the beginning of the proposal stated, in part:

> The proposed rule deletes the existing text of *N.J.A.C.* 13:51 and replaces it with new language to accomplish necessary revision, up-dating and clarification of terms and conditions applicable to ... forms and methods by which the Attorney General certifies chemical breath test equipment and the methods for the use of these devices.

> The new language will also assist the various courts in this State by providing definitions and clearer application of these rules and regulations thus avoiding potential misinterpretation.

> The principal changes in the proposed language include: ... clarification of the approved devices and methods for their use.

*N.J.A.C.* 13:51–3.6, adopted as part of the amendment which was effective June 21, 1982, was entitled: "Approved methods for performing chemical analysis of a person's breath utilizing an approved instrument." It stated in part:

(a) Breathalyzer, Model 900 and Model 900A:

1. The Breathalyzer Model 900 and 900A, both being approved instruments, have been determined to contain functional and operational components that are the same or perform the same or similar operations or functions and operate utilizing the same principle or theory of chemical breath analysis and utilize the same chemical compounds interchangeably in the analysis process. The term "Breathalyzer" as utilized in this chapter shall mean both the Breathalyzer Model 900 and Model 900A.

At the time of defendant's test (February 18, 1982) the Attorney General had approved only the "Breathalyzer as invented by Professor Robert Borkenstein." The question, therefore, is whether the Models 900 and 900A Breathalyzers were then within that description. The State argues that they were. If that is so, the machine used in testing defendant was an approved machine and his objection to its use must be overruled. In addressing this question the State presented three expert witnesses: Byron N. Moore, a breath test coordinator and instructor with the New Jersey State Police; Kenneth Newbauer, supervisor of a State Police Breath Test Unit, and Dr. Richard Saferstein, the State Police's Chief Forensic Chemist and a conceded expert on the use of the breath test as a means of determining blood-alcohol content.

These experts testified that the Model 900 Breathalyzer was the first Borkenstein machine used in New Jersey and necessarily the machine described as "The breathalyzer as developed and perfected by Robert F. Borkenstein" in the original approval of the Attorney General. The defense does not argue otherwise. In addition, Dr. Saferstein testified, without contradiction, that the only differences between the 900 and 900A models consisted of the addition of an automatic timing device and the substitution of a nullmeter for a galvanometer in the 900A. It was his opinion that the automatic timing device was merely a convenience and that the nullmeter operated under the same principle as the galvanometer. Any other differences were minor and

cosmetic. The method of testing breath was the same, whichever model was used; there was no difference between the machines. He added that all of his texts and references to the 900 and 900A models referred to them as "the instrument that Dr. Borkenstein developed."

Officers Moore and Newbauer testified to their use of the two models as instructors and operators. The Model 900 was in use prior to 1971 when the 900A was introduced. Both models were used in teaching officers of the State Police how to administer the breathalyzer test; they were considered interchangeable. The same certifications and checkoff lists were employed in preparing for their operation. Any operator certified to use one model was considered certified to use the other. Officer Newbauer participated in the State Police evaluation of the 900A in 1971. It was found to be satisfactory and recommended for use to his superior officer.

This testimony was not contradicted. It requires the conclusion that the Models 900 and 900A Breathalyzers are interchangeable and within the language of the Attorney General when he approved "the breathalyzer as developed and perfected by Robert F. Borkenstein." Consequently, the 900A machine used in defendant's test was an approved machine. The results of that test were properly admitted into evidence.