229 N.J. Super. 207 (1988)
550 A.2d 1313
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANDREW DOWNIE, DANIEL MATTHEWS, MARTIN MAROTTA, AND CHARLES CARROLL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1988.
Decided November 28, 1988.
*209 Before Judges ANTELL, DREIER and HAVEY.
Mark P. Stalford, Assistant Prosecutor argued the cause for appellant (John Kaye, Monmouth County Prosecutor, attorney; Mark P. Stalford, of counsel and on the letter brief).
Stephen M. Pascarella argued the cause for respondents (Francis X. Moore, attorney; Francis X. Moore, on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
The State appeals, on leave granted, from a Law Division order permitting the municipal courts of four municipalities, all served by the same municipal court judge, to hear arguments relating to the admissibility of breathalyzer evidence. The defendants in the four cases are represented by the same attorney. The Monmouth County Prosecutor superseded the various municipal prosecutors and represented the State at the Law Division hearing and in this court.[1] In separate actions arising in Burlington County, similar arguments have been raised and disposed of in State v. McGinley, 229 N.J. Super. 191 (Law Div. 1988).
On the substantive issue, we understand that each defendant finds no fault with the operation of the particular *210 breathalyzer involved in his case, but rather challenges whether the breathalyzer machines in general accurately test the subject's blood-alcohol content. The Law Division judge determined that the four matters should not have been consolidated and that four separate hearings should be held. He refused, however, to preclude the municipal courts from holding such hearings.[2]
The State urges that Romano v. Kimmelman, 96 N.J. 66, 72 (1984), conclusively determined by an order of general application, that
[t]he Smith and Wesson Breathalyzer Models 900 and 900A are found to be scientifically reliable and accurate devices for determining the concentration of blood alcohol. Such scientific reliability shall be the subject of judicial notice in the trial of all cases under N.J.S.A. 39:4-50.
And see discussion of this Order, 96 N.J. at 82. The Order further stated:
The results of the administration of Model 900 can be received in evidence in accordance with the standards under State v. Johnson, 42 N.J. 146 (1964), without further proof establishing any additional conditions for admissibility [concerning radio frequency interference]. (96 N.J. at 72).
Further,
All ... future cases under N.J.S.A. 39:4-50 shall be prosecuted in accordance with the terms of the within Order, which shall remain in effect unless otherwise modified by further order, or final decision of this Court. [Id. at 74].
See also State v. Tischio, 107 N.J. 504, 506 (1987), app. dism. for want of substantial federal question, ___ U.S. ___, 108 S.Ct. 168, 98 L.Ed.2d 855 (1988), holding that N.J.S.A. 39:4-50 mandates a conviction for DWI based solely on the breathalyzer *211 reading in excess of .10%. Even in the 1964 case of State v. Johnson, cited in Romano, the Supreme Court stated that
[w]hile such testimony [disputing the accuracy of the breathalyzer device] is probably technically still admissible, its probative value and weight is almost nil in the present state of knowledge of the scientific and medical community. [State v. Johnson, 42 N.J. at 171].
It appears that the "almost nil" chance noted in Johnson has ripened into a more plausible attack based upon new data. But the issue here is whether in the face of the Supreme Court's Order and decision in Romano, such proof can be accepted other than as an offer of proof for the purpose of making a record. R. 1:7-3. In State v. McGinley, the trial judge initially determined that, applying the principles of stare decisis, he was without jurisdiction to challenge the Supreme Court decisions in Johnson, Romano and Tischio. 229 N.J. Super. at 194-95. He then reconsidered and issued the McGinley opinion, stating that the new challenges involved factors never before presented to the Supreme Court. Id. at 194-97. In Romano the breathalyzer survived a general challenge based only upon radio frequency interference, and the Court permitted specific proof of the particular device's or location's sensitivity. In McGinley, four additional factors were raised, and have been incorporated by defendants here by reference:
The scientific evidence upon which the defendants rely shows the following: (1) The breathalyzer is designed to test persons having a 2100/1 blood-breath ratio. Such ratios in fact vary from 1100/1 to 3200/1 and the variance can produce erroneous test results. High readings are produced in 14% of the population. (2) The temperature of the machine itself varies, affecting test results. (3) Body temperatures vary, affecting test results. (4) Hematocrit (the solid particles in whole blood) levels vary, particularly between males and females, affecting test results. These sources of error make breathalyzer test results suspect and, to insure reliability, require the substantial reduction of blood-alcohol percentages based on a translation of those results. The leading expert in the field, recognized as such by both State and defense, is of the opinion that the reduction should be .055. [229 N.J. Super. at 193.]
In the case before us it was represented at oral argument that these factors would be shown, plus additional factors such as race. For example persons of Asian origin tend to show falsely high readings based upon average blood-breath ratios under *212 2100/1. While there may be constitutional ramifications if these allegations are proven, we do not reach this issue. It is better left for review on a more complete record, perhaps after Supreme Court review.
The problem with the approach taken in McGinley and urged here is that the Supreme Court's order in Romano was not that judicial notice "may" be taken, but that judicial notice "shall" be taken of the scientific reliability of the breathalyzers. The machines were "found to be scientifically reliable and accurate devices for determining the concentration of blood alcohol." 96 N.J. at 72. The only qualification to this finding was the necessary proof of freedom from radio frequency interference. "All ... future cases under N.J.S.A. 39:50-4" are subject to the order.[3] Once judicial notice is taken, no proof to the contrary is permitted. Evidence R. 11; Klimko v. Rose, 84 N.J. 496, 504 (1980). As noted in Romano, the only issues subject to proof in the admission of breathalyzer results are the working nature of the particular machine, the qualification of the operator, and the method of administration of the test. 96 N.J. at 91. Therefore the order remanding the matters to the separate municipal courts for proof outside of these permitted areas was substantively incorrect.
The issues raised by defendants are of significant dimensions since they have alleged variables, heretofore unconsidered by New Jersey appellate authority, in the interpretation of breathalyzer results. As noted in McGinley, other states have considered the issue, with varying results. Compare State of Nebraska v. Burling, 224 Neb. 725, 400 N.W.2d 872 (1987), with People v. Pritchard, 162 Cal. App.3d Supp. 13, 209 Cal. Rptr. 314 (Super.Ct. 1984), and People v. Gineris, 162 Cal. App.3d Supp. 18, 209 Cal. Rptr. 317 (Super.Ct. 1984). The issues are *213 especially important in New Jersey in view of the per se application of N.J.S.A. 39:4-50. The matter of the temperature of the machine may easily be solved, and can constitute merely another item on the operator's checklist. But, if defendants are correct concerning the variability of the 2100/1 breath-blood ratio (the internal basis upon which the breathalyzer machine is based), vastly different individual blood-alcohol content can result in the statutory .1% reading. Viewed a different way, inebriated drivers may pass, while comparatively sober drivers may fail a breathalyzer test. Focusing on the variation in the 2100/1 breath-blood ratio, and accepting that the test must be one which indicates blood-alcohol content, significant sections of the population may be held to a standard different from others. As to an individual's difference from the norm, if the only way one can determine how he or she fits within the alleged breath-blood ratio continuum of from 1100/1 to 3200/1, with the additional variables of the person's hematocrit levels, is to have a blood test (which itself could conclusively establish the blood-alcohol level), then the machine may well be no more than a rough gauge of inebriation in all but the most serious cases. See State of Nebraska v. Burling, supra, applying a 52.38% reduction factor, as opposed to the .055 reduction suggested in McGinley.
We recognize these problems, but we are also bound by the Romano Order, which we view as a clear exercise of the Supreme Court's constitutional rule-making power. N.J. Const. (1947), Art. VI, § II, par. 3. The Order is definite when it states that it is binding in all future cases. 96 N.J. at 74. While we recognize the scholarly and persuasive analysis of the court in McGinley, we must overrule that decision unless and until the Supreme Court takes some action to relax the Romano Order. We can only suggest that this matter be reviewed immediately, perhaps by a Supreme Court remand of these cases to a judge or master to establish a record. We may not, however, take this action ourselves, and are constrained under the present law to reverse and remand the four matters before *214 us for separate trials at which such proof shall be inadmissible except to make a record for some future appeal. We will, nevertheless, on our own motion grant a stay to permit defendants to petition the Supreme Court for certification.
REVERSED AND REMANDED.
NOTES
[1] Defendants challenge the right of the Monmouth County Prosecutor to appeal the Law Division decision. N.J.S.A. 2A:158-4 and 5 give the Attorney General and county prosecutors plenary jurisdiction to prosecute all criminal matters in this State. It is clear from the wording of N.J.S.A. 2A:158-5 that the words "criminal business" in § 4 are not limited to crimes, but include the prosecution of "offenders against the laws." Cf. R. 3:23-9. Since the Monmouth County Prosecutor has primary authority to prosecute, he may supersede the various municipal prosecutors; we therefore reject the standing issue raised by defendants.
[2] The State contends that the deconsolidation order is not properly before us, since the defendants have not taken a cross-appeal. This is so, and we find no authority for a municipal judge to consolidate cases arising in different municipal courts. But for future guidance we see no impediment to a litigant on his or her own motion, or as directed by a municipal court judge, making an application to the Assignment Judge in the interest of judicial economy for an order permitting, not consolidation, but a common proof hearing or argument on matters pending before the municipal judge in more than one jurisdiction.
[3] Since Romano, the statute was amended to read as it was enforced in Tischio. But the Supreme Court in Romano was aware of the new per se language, 96 N.J. at 78-79, 94, and still made its order effective in all future cases.