231 N.J. Super. 464 (1989)
555 A.2d 1133
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
DAVID J. LAURICK, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1988.
Decided February 28, 1989.
*466 Before Judges ANTELL, DREIER and HAVEY.
Jay G. Trachtenberg argued the cause for appellant and cross-respondent (Barbara A. Nyquist on the briefs).
Stephen H. Monson, Deputy Attorney General, argued the cause for respondent; Larry R. Etzweiler, Deputy Attorney General, argued the cause for cross-appellant (Cary Edwards, Attorney General of New Jersey, attorney; Stephen H. Monson and Larry R. Etzweiler on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
After defendant's motion to suppress the results of his breathalyzer tests was denied, he entered a conditional guilty plea in the Superior Court, Law Division, to driving while under the influence of alcohol, contrary to N.J.S.A. 39:4-50. In a reported opinion at 222 N.J. Super. 636 (Law Div. 1987), Judge Haines found that defendant was a first offender and sentenced him to a six-month revocation of his driving privileges together with a fine of $250.
On appeal, defendant claims that his breathalyzer test results should have been suppressed because the breathalyzer utilized by the State Police, a National Draeger, Model 900, has not *467 been certified pursuant to N.J.A.C. 13:51-3.2 as an approved method of breath testing. He also argues that the applicable regulations for testing and certifying methods and instruments for breath testing are void for vagueness. Finally, he contends that the trial court abused its discretion in denying his discovery demand that the State produce "relevant and material" evidence pertaining to the Breathalyzer, Model 900. On its cross-appeal, the State asserts that the trial court erred in not sentencing defendant as a second offender. We now affirm.
Defendant was arrested in 1985 in North Hanover Township for driving while under the influence. He was transported to the Fort Dix Police Barracks where the State Police administered two breath tests utilizing the Draeger Breathalyzer, Model 900. Defendant stipulated that the results of these tests revealed a blood-alcholol level in excess of 0.10%. See N.J.S.A. 39:4-50(a).
Defendant moved to suppress the breath test results, contending that the State failed to have the Draeger machine tested and certified as required by N.J.A.C. 13:51-3.2. At the hearing, it was determined that Draeger had purchased the patent and manufacturing rights to the "breathalyzer" from Smith & Wesson Corporation, which had acquired the rights from Stephenson Corporation. Defendant initially stipulated that the Draeger machine was identical to the machine manufactured by Smith & Wesson. Because N.J.A.C. 13:51-3.5 and N.J.A.C. 13:15-3.6 approve the "Breathalyzer, Model 900" as an instrument and method for chemical breath testing, the trial court concluded, based in part on defendant's stipulation, that independent testing and certification of the Draeger Model 900, were not required "merely because of a change of manufacturer." The trial court therefore denied the motion to suppress.
Defendant moved for reconsideration, arguing that he had "new evidence" that there were differences between the Draeger and Smith & Wesson machines. He also moved for discovery, demanding that the State produce all records of its *468 testing and certification of the Smith & Wesson and Stephenson Model 900's, and of all records of repairs, malfunctions, and "retirements" of Model 900 machines. The trial court denied this request, but ordered the State to produce any schematic drawings of the Draeger machine and further ordered that the breathalyzer utilized to test defendant be made available for inspection by defendant's expert.
On the trial date, defendant repeated his principal contention that the State's failure to retest and recertify the Draeger Model 900 compelled suppression of the breath test results. However, defendant was unable to produce any evidence, expert or otherwise, demonstrating a difference between the Draeger and Smith & Wesson machines. Concluding that defendant failed to rebut the presumptive validity afforded the Attorney General's actions, the trial court again denied the motion to suppress.
Defendant thereupon entered a conditional plea of guilty to a violation of N.J.S.A. 39:4-50(a). Prior to sentencing, he testified that in 1982 he had entered a guilty plea without counsel to a driving while under the influence charge. He stated that the municipal court did not then advise him of his right to retain counsel and thus he was unaware of that right when he entered the plea. Concluding that defendant had met his burden of proving the absence of counsel at the time of his first conviction, Judge Haines, sitting as a municipal court judge, found that the first conviction could not be considered for sentence enhancement purposes under N.J.S.A. 39:4-50(a)(2). See State v. Laurick, supra, 222 N.J. Super. at 640.
Defendant again argues before us that while the Smith & Wesson Breathalyzer, Model 900, may be an approved instrument and method of breath testing, the Model 900 manufactured by Draeger has never been independently tested and approved by the State Police and Attorney General, and thus cannot be considered "valid" as a breath testing technique.
*469 N.J.S.A. 39:4-50.3 provides that chemical analysis of a person's breath, "to be considered valid under the provisions of this act," must be performed "according to methods approved by the Attorney General, and by a person certified for this purpose by the Attorney General." Rules promulgated by the Attorney General regulating chemical breath testing are codified at N.J.A.C. 13:51-1.1, et seq. Specifically, N.J.A.C. 13:51-3.5(a), as amended in 1982, states, in relevant part, that:
The Breathalyzer, Model 900, is an instrument approved by the Attorney General ... and this subchapter, for the testing of a person's breath by chemical analysis. [Emphasis supplied].
The Breathalyzer, Model 900, is also an approved method for performing chemical analysis of a person's breath. See N.J.A.C. 13:51-3.6(a).
Approval of instruments utilized for breath testing is governed by N.J.A.C. 13:51-3.2, which designates the Superintendent of State Police as the official to test the instrument and method for "specificity, precision and accuracy." Upon completion of testing, the Superintendent recommends approval to the Attorney General, who, upon review, may certify the instrument or method pursuant to law. N.J.A.C. 13:51-3.2(d).
Defendant notes that Draeger's acquisition of Smith & Wesson's patent right to the Model 900 simply protects Draeger from competitors producing the same machine, but does not prohibit Draeger from altering or modifying the instrument and making the Model 900 less reliable. He therefore argues that separate testing and certification of the instrument produced by each manufacturer is required under N.J.A.C. 13:51-3.2 to assure the requisite "specificity, precision and accuracy." To require less, defendant contends, violates N.J.S.A. 39:4-50.3 and his due process rights under the Fourteenth Amendment.
Defendant's argument ignores the fact that the regulations certify the "Breathalyzer, Model 900" as an approved instrument and method for breath testing without reference to specific manufacturers of the instrument. The apparent legislative intent of the regulations was to approve a generic instrument *470 and method for the testing of a person's breath as developed and perfected by Robert F. Borkenstein, as originally approved by the Attorney General in 1966. See State v. Yerkes, 189 N.J. Super. 147, 150 (Law Div. 1983). The Breathalyzer, Model 900, was the first Borkenstein machine used in New Jersey and approved by the Attorney General. Id. at 151. The clear and unambiguous language of the present regulations, approved in 1982, adopts this instrument and method without reference to a name of the specific manufacturer.
The legislative history of N.J.A.C. 13:51-3.5 and N.J.A.C. 13:51-3.6 supports this conclusion. In September 1966, the Attorney General approved as a method of chemical analysis of breath for determining blood-alcohol content "[t]he breathalyzer as developed and perfected by Robert F. Borkenstein." See State v. Yerkes, supra, 189 N.J. Super. at 150. In 1969, N.J.A.C. 13:51-21, now repealed, listed "approved methods and instruments" as including "[t]he breathalyzer as invented by Professor Robert Borkenstein...." As published in February 1980, N.J.A.C. 13:51-3.5 included the following "approved methods and instruments":
(a) The Breathalyzer as invented by Professor Robert Borkenstein[.]
........
(b) The Dominator Albreath manufactured by the Stephenson Company[.]
(c) The Alco-Tector as manufactured by Decatur Electronics[.]
(d) The Breathalyzer, Model 100, manufactured by Smith & Wesson/General Ordinance Equipment Company.
In 1982, N.J.A.C. 13:51-3.5 was amended as follows:
Approved instruments for performing chemical analysis of a person's breath
(a) The Breathalyzer, Model 900[.]
(b) The Breathalyzer, Model 900A[.]
(c) The Dominator Albreath[.]
(d) The Alco-Tector[.]
(e) The Breathalyzer, Model 1000[.]
Summarizing reasons for the proposed 1982 amendment, the Attorney General stated:
The proposed rule deletes the existing text of N.J.A.C. 13:51 and replaces it with new language to accomplish necessary revision, up-dating and clarification *471 of the terms and conditions applicable to ... forms and methods by which the Attorney General certifies chemical breath test equipment and the methods for the use of these devices.
The new language will also assist the various courts in this State by providing definitions and clearer application of these rules and regulations thus avoiding potential misinterpretation.
The principal changes in the proposed language include: ... clarification of the approved devices and methods for their use. [14 N.J.R. 376 (1982)].
We view the 1982 amendments deleting reference to manufacturers as reflecting a clear intent on the Attorney General's part to approve the generic breathalyzer, Model 900, originally invented by Borkenstein. Implicit in the amendments is the Attorney General's satisfaction that the method of chemical analysis and components of the instrument are reliable and accurate, regardless of which company holds the patent and manufacturing rights. The Law Division in Yerkes, in a different context, so held. The court concluded that although the Model 900A was not expressly approved by the regulations when defendant was arrested and tested, it was essentially the same method of chemical breath testing approved by the Attorney General when he certified "The Breathalyzer as invented by Professor Robert Borkenstein[.]" See 189 N.J. Super. at 151-152.[1]
Further, a long period of consistent construction by an agency of its own regulations is entitled to great weight in ascertaining the meaning or intent of the language used. See N.J. Bldrs. v. Dept. of Environmental Protec., 169 N.J. Super. 76, 89-90 (App.Div.), certif. den. 81 N.J. 402 (1979); In re Plainfield-Union *472 Water Co., 57 N.J. Super. 158, 177 (App.Div. 1959). The State Police have utilized the Draeger instrument since Draeger acquired the patent and manufacturing rights from Smith & Wesson. Pursuant to N.J.A.C. 13:51-3.4, the Draeger Model 900 is inspected periodically by a Breath Test Coordinator to assure its specificity, precision and accuracy. The inspection certificate filed after inspection certifies that the instrument inspected was a "Breathalyzer 900," as approved by the regulations. The fact that the Attorney General has not considered a change in the manufacturer of the Model 900 as a sufficient basis to retest and recertify the machine is persuasive evidence that the State Police and Attorney General have examined the instruments and have found no difference in the Model 900 as manufactured by Draeger since it acquired the rights from Smith & Wesson.
Moreover, requiring retesting and recertification upon change in manufacturers leads to an absurd result. See State v. Gill, 47 N.J. 441, 444 (1966). If defendant is correct, retesting and recertification may indeed be required when the manufacturer of the machine merges with another company, or if it changes its trade name or, as the trial court noted, if there are changes in the personnel who manufacture the instrument.
Finally, a presumption of reasonableness must be afforded the Attorney General's interpretation of the regulations. See Barone v. D. of Human Serv., Div. of Med. Asst., 210 N.J. Super. 276, 285 (App.Div. 1986), aff'd 107 N.J. 355 (1987). Where the Legislature, as here, entrusts an agency with the responsibility of "selecting the means of achieving an articulated statutory policy, the relation or nexus between the remedy and the goal sought to be accomplished is peculiarly a matter for administrative competence." NJPDES Permit No. NJ 0055247, 216 N.J. Super. 1, 11 (App.Div.), certif. den. 108 N.J. 185 (1987). The burden is on the party who challenges the validity of the action as being arbitrary, or as being contrary to the legislative purpose. Smith v. Ricci, 89 N.J. 514, 525 app. dis. 459 U.S. 962, 103 S.Ct. 286, 74 L.Ed.2d 272 (1982).
*473 Here, the trial court gave defendant ample opportunity to demonstrate how the Draeger Breathalyzer, Model 900, was different than the instrument manufactured by Smith & Wesson. Defendant had the schematic of the Model 900 and his expert had the opportunity to inspect the Draeger instrument utilized for defendant's testing.[2] Neither defendant nor his expert was able to present any evidence that Draeger had altered or modified the Breathalyzer, Model 900 since the time it had acquired the patent and manufacturing rights from Smith & Wesson. We agree with the trial court that, without more, no reasonable inference can be reached that the Draeger instrument was any different than that manufactured by Smith & Wesson.
We also reject defendant's contention that the trial court erred in denying his demand for discovery. Defendant requested records of repairs, malfunctions and "retirement" of all Breathalyzer Model 900 instruments, presumably since 1966, as well as records of the testing and certification of the Smith & Wesson and Stephenson Model 900's. While our system recognizes a defendant's right to have complete discovery, "allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws." State v. R.W., 104 N.J. 14, 28 (1986). Beyond being unreasonably burdensome and far-reaching, these records were not relevant to the issue before the trial court. See R. 3:13-3(a). The records at best were relevant as to the issue of reliability of the Model 900, not whether there were differences in the machine as manufactured *474 by Draeger and Smith & Wesson.[3] The trial court pressed defendant to show how these records would be relevant to establish differences, and defendant failed to do so. The trial court ordered the relevant schematics be produced and also directed that defendant's expert be permitted to examine the machine in question. We find no abuse of discretion in the trial court's denial in the remainder of defendant's demand.
Finally, we find no merit to defendant's contention that the regulations are void for vagueness. "A law is void as a matter of due process if it is so vague that persons `of common intelligence must necessarily guess at its meaning and differ as to its application'." Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983), quoting Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). N.J.A.C. 13:51-3.5 is designed to give law enforcement officers notice of what breath-testing devices have already been approved by the Attorney General. The State Police and other law enforcement officers have had no problem in understanding the scope and intendment of the regulation. N.J.A.C. 13:51-3.2 leaves no doubt that the regulation requires new methods and instruments to be tested and certified by the State Police and Attorney General. Defendant's vagueness argument was therefore properly rejected by the trial court.
On the State's cross-appeal, it contends that the trial court erred in sentencing defendant as a first offender.[4] It argues that since defendant did not receive a custodial sentence in 1982, his Sixth Amendment right to counsel was not violated as a result of the municipal court's failure to advise him of his *475 right to counsel. See Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). It also argues that Rodriguez v. Rosenblatt, et al., 58 N.J. 281, 295 (1971), which requires a municipal court to assign counsel to indigent defendants in cases involving a "consequence of magnitude," does not preclude use of a prior uncounseled conviction where, as here, there is no evidence that defendant was indigent at the time of his 1982 conviction. The State therefore contends that defendant's 1982 uncounseled conviction may be used for enhancement purposes even if he had not been advised of his right to counsel. We disagree.
In a plurality opinion in Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169, reh. den. 447 U.S. 930, 100 S.Ct. 3030, 65 L.Ed.2d 1125 (1980), five justices, in three concurring opinions, concluded that the Sixth Amendment prohibited the use of a prior uncounseled conviction to enhance defendant's subsequent conviction from a misdemeanor to a felony. Justice Stewart reasoned that since defendant was sentenced to an increased term of imprisonment "only because" he had been previously convicted without the assistance of counsel, the enhanced sentence violated the rule of Scott v. Illinois, supra, 440 U.S. at 373-374, 99 S.Ct. at 1162, 59 L.Ed.2d at 373-74, which adopted actual imprisonment as the line defining the constitutional right to appointment of counsel. Baldasar v. Illinois, supra, 446 U.S. at 224, 100 S.Ct. at 1586, 64 L.Ed.2d at 172-173. In his concurring opinion, Justice Marshall reasoned that while the first uncounseled conviction may not have violated Scott, it could not be used for enhancement purposes where the enhanced sentence is imposed as "a direct consequence of that uncounseled conviction[.]" Id. at 227, 100 S.Ct. at 1588, 64 L.Ed.2d at 174.
In State v. Sweeney, 190 N.J. Super. 516 (App.Div. 1983), we considered whether any of the opinions in Baldasar apply to a defendant convicted as a second offender under N.J.S.A. 39:450, *476 but whose enhanced penalty involved a noncustodial term. We concluded:
[n]one of the views expressed by the justices precludes using the present defendants' prior convictions to impose enhanced noncustodial penalties for a second driving under the influence conviction. [Id. at 523; emphasis in original].
Here defendant faces a custodial term from 2 to 90 days as a second offender under the present statute. See N.J.S.A. 39:450(a)(2). However, N.J.S.A. 39:4-50(a) affords the trial court the option of permitting a defendant, as a second offender, to serve the term at an Intoxicated Driver Resource Center instead of the county jail. There may at least be a question as to whether the two days of treatment at the center constitutes a "custodial term." Thus, Sweeney's reasoning that no Sixth Amendment right is implicated may still apply.
However, aside from Sixth Amendment considerations, we agree with Judge Haines that State law bars use of the prior conviction for purposes of imposing an enhanced term under N.J.S.A. 39:4-50. Our Supreme Court in Rodriguez v. Rosenblatt, et al., supra, held that:
... as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost. [58 N.J. at 295; emphasis supplied].
Citing the Rodriguez public policy consideration, we held in Sweeney that "where a defendant is in danger of incurring a substantial loss of driving privileges as a result of an alleged motor vehicle violation, he is entitled to counsel." 190 N.J. Super. at 524. We made no distinction between indigent and non-indigent defendants. See also Beckworth, et al. v. N.J. State Parole Bd., 62 N.J. 348, 365 certif. den. 63 N.J. 583 (1973). Indeed, R. 3:27-2 provides that:

[e]very person charged with a non-indictable offense shall be advised by the court of his right to retain counsel or, if indigent and constitutionally or otherwise entitled by law to counsel, of his right to have counsel assigned without cost. [Emphasis supplied].
In our view, a municipal court's failure to adhere to either the public policy pronounced in Rodriguez or the mandate of R. *477 3:27-2 disqualifies the State's use of the 1982 uncounseled conviction for enhancement purposes. Without adherence to Rodriguez and R. 3:27-2, the prior conviction is not sufficiently reliable to trigger the severe sanctions under the enhancement statute. Defendant's prior uncounseled conviction does not become "more reliable merely because [he] has been validly convicted of a subsequent offense." Baldasar v. Illinois, supra, 446 U.S. at 228, 100 S.Ct. at 1588, 64 L.Ed.2d at 175, (Marshall, J., concurring). Our recent opinion in State v. Carey, 230 N.J. Super. 402 (App.Div. 1989) is in accord. As we stated in Carey, "[t]he policy embodied in Rodriguez and R. 3:27-2 would have no meaning or impact if our conclusion were otherwise." Id. at 409.[5]
Sweeney properly places the burden of proving the lack of legal representation at the time of the first conviction upon the defendant. 190 N.J. Super. at 525-526; see also State v. Carey, supra, 230 N.J. Super. at 409-10; State v. Regan, 209 N.J. Super. 596, 606 (App.Div. 1986); State v. Bowman, 135 N.J. Super. 210, 211 (App.Div. 1975). Here, there is no question that defendant met that burden by giving uncontradicted testimony under oath that he entered a guilty plea to the 1982 offense without counsel and without being advised of his right to retain counsel as required by R. 3:27-2. In fact, the prosecutor conceded at the time of sentencing, in view of defendant's testimony, that defendant should be sentenced as a first offender.
We cannot presume, without some contravailing proofs presented by the State, that simply because R. 3:27-2 requires the court to advise a defendant of his right to counsel, the municipal judge did so. Nor can we conclude, particularly since *478 the trial court accepted defendant's testimony as believable, see State v. Johnson, supra, 42 N.J. at 161 that defendant perjured himself in testifying that he did not know of his right to counsel in 1982. We therefore agree with the trial court that the 1982 conviction cannot be used for enhancement purposes.
We are mindful of the State's assertion that it may have difficulty producing records of counsel representation in prior convictions. Sound recordings and stenographic records of proceedings in municipal courts are kept for only three years. See R. 7:4-5(a). However, the difficulty may be resolved by noting hereafter compliance with R. 3:27-2 and Rodriguez in the record of conviction.
Affirmed.
NOTES
[1] In Romano v. Kimmelman, 96 N.J. 66, 72 (1984), the Supreme Court conclusively determined by order that the Breathalyzer, Models 900 and 900A, are scientifically reliable. See also State v. Downie, 229 N.J. Super. 207 (App. Div. 1988), leave to appeal granted 114 N.J. 498 (1989). Although the order refers only to the Smith & Wesson model, it also states that "[t]he results of the administration of the Model 900 can be received in evidence in accordance with the standards under State v. Johnson, 42 N.J. 146 (1964)[.]" Romano, supra, 96 N.J. at 72 [emphasis supplied]. We read the order and opinion as referring to the generic Model 900, and not intending to limit its application to a specific manufacturer.
[2] Pursuant to the trial court's discovery order, the Attorney General submitted two pamphlets to defendant, one bearing a 1968 Stephenson Corporation copyright and the other being a "Breathalyzer Model 900 Instruction Manual, National Draeger, Inc.," 1979 edition. The Draeger manual was in fact a Smith & Wesson manual with a National Draeger corporate label affixed. Within the manual were a number of schematic drawings of the Breathalyzer, Model 900. As far as we can determine from the record, no other Draeger schematic is in the possession of the Attorney General.
[3] The records may not have even been relevant as to the issue of reliability in view of the Supreme Court's holding and order in Romano. 96 N.J. at 72.
[4] The State has the right to cross-appeal to seek correction of an illegal sentence. See State v. Sheppard, 125 N.J. Super. 332, 336 (App.Div.), certif. den. 64 N.J. 318 (1973). If defendant was a second offender, the sentence imposed was illegal. See N.J.S.A. 39:4-50(a)(2).
[5] In State v. McGrew, 127 N.J. Super. 327 (App.Div. 1974), we affirmed a three-month jail term imposed upon a second offender under N.J.S.A. 39:450(a) despite the fact that defendant, at the time of his first conviction, was indigent and uncounseled. However, McGrew is distinguishable since there defendant's first conviction was prior to Rodriguez, see 127 N.J. Super. at 329 and we observed "there is nothing in Rodriguez to suggest an intent that the holding should apply retroactively." Ibid.