OPINION OF THE COURT
Renee A. White, J.
The defendants were separately arraigned and charged with driving while intoxicated (Vehicle and Traffic Law § 1192 [2]), an unclassified misdemeanor. Each defendant now similarly moves to preclude the breathalyzer result on the ground that it is unreliable. In light of the identity of issues presented the court has determined that the issues can best be addressed by rendering a single decision. Specifically, the defendants argue that the breathalyzer machine does not measure the blood alcohol content but rather measures the breath alcohol con *271 tent which is then converted through a numerical ratio into the blood alcohol content. The defendants further contend that the conversion factor of 2,100:1 which is utilized in determining the concentration of alcohol in the defendant’s blood is inaccurate.
Vehicle and Traffic Law § 1192 (2) provides in pertinent part as follows: "No person shall operate a motor vehicle while such person has .10 of one per centum or more by weight of alcohol in his blood as shown by chemical analysis of his blood, breath, urine or saliva”.
The breathalyzer is premised on the principle that a mathematical relationship exists between the alcohol content of a person’s blood and that contained in his lungs. The concentration of alcohol in blood is assumed to be 2,100 times that in the breath. This calculation is based upon the 1972 National Safety Council’s determination that the concentration of alcohol present in 2,100 milliliters of lung air at 34 degrees centigrade will equal the concentration of alcohol present in one milliliter of blood. This numerical relationship had been generally accepted by the scientific community. (See, Gerstenzang, Handling the DWI Case in New York § 29.3 [A]; Erwin, Defense of Drunk Driving Cases § 15.02 [1963].) However, over the years with the advent of new scientific technology, this ratio is now being questioned.
1. THE PARTIES’ CONTENTIONS
The defendants in essence are requesting a new Frye hearing on the admissibility of the breathalyzer. The defendants base this request on their contentions that the conversion factor utilized by the breathalyzer is merely an average which is now recognized to be inaccurate. The defendants argue that discrepancies exist in the blood-breath ratios of different individuals, and that the blood-breath ratio of an individual is in constant flux. It is further alleged that individuals having blood-breath ratios substantially higher or lower than 2,100:1 will exhibit erroneous testing results as determined by the breathalyzer.
In response to defendants’ motions, the People concede that some individuals may have a conversion ratio below 2,100:1. However, the People allege that reliable studies have not found ratios lower than 1,750:1. Specifically, the People argue that recent studies correlating breath results and direct blood analysis have determined that on the average the breath *272 alyzer underestimates blood alcohol concentrations. Furthermore, the People allege that in the rare instances in which the breath analysis overestimates the actual blood alcohol level, the deviation is small.
The People conclude that these studies indicate "that breath alcohol testing can be very reliable means of assessing blood and that contrary to the judicial argument sometimes raised against its reliability, it appears evidentially sound.”
2. CASE LAW IN OTHER JURISDICTIONS
Although the court is unaware of any New York decision on point, other States have considered the issue. In no case has the court held the breathalyzer or intoxilyzer results inadmissible. Rather, the testimony as to the variations in the blood-breath conversion ratio has been admitted as an issue to be considered by the trier of facts. Such testimony goes to the weight of the evidence not to admissibility of the breathalyzer results. (But see, State v Downie, 229 NJ Super 207, 550 A2d 1313 [App Div 1988], overruling State v McGinley, 229 NJ Super 191, 550 A2d 1305 [1988]; see, discussion infra.)
A review of the litigation in Nebraska is instructive. In State v Burling (224 Neb 725, 400 NW2d 872 [1987]), evidence offered at trial indicated that the conversion ratio varies from one individual to another and ranges from 1:1,100 to a high of 1:3,400. The court concluded that if one had a breath-to-blood distribution ratio which was higher than the average, the machine would understate the actual blood alcohol level. However, if one’s ratio were at the 1:1,100 level the machine would overstate his blood alcohol level by 52.38%. The court, following the ruling of State v Bjornsen (201 Neb 709, 271 NW2d 839 [1978]), held that "a test result which was subject to a margin of error had to be adjusted so as to give the defendant the benefit of that margin * * *. [T]he Intoxilyzer must be reduced to 52.38 * * *. [Consequently, the Intoxilyzer * * * fails to establish that the defendant had 'ten-hundredths of one percent by weight of alcohol in his blood’ ”.[1] (224 Neb, supra, at 730-731, 400 NW2d, supra, at 876-877.)
However, the court rejected the defendant’s challenge to the use of intoxilyzer conversion of 2,100:1 in State v Hvistendahl (225 Neb 315, 405 NW2d 273 [1987]). The court held that it *273 was up to the trier of fact to resolve conflicts in evidence and weigh the credibility of witnesses. Characterizing the testimony of the defendant’s expert and State’s expert as a “swearing match”, the court affirmed the decision of the trier of fact as there was sufficient evidence in the record to sustain its finding of guilt.
In State v Babcock (22.7 Neb 649, 419 NW2d 527 [1988]) the defendant’s conviction of driving while under the influence of alcohol was affirmed. The defendant had argued that as a matter of law the intoxilyzer reading should be reduced by 52.38% pursuant to State v Burling (supra). The court clarified its ruling, stating: “In State v. Burling, supra, this court did not intend, nor did it, rule that as a matter of law a reading of the test result * * * should automatically be adjusted * * *. [T]his court merely ruled upon evidentiary facts peculiar to each of those cases. Whether an adjustment is required is dependent upon the credible evidence in each case.” (227 Neb, supra, at 653, 419 NW2d, supra, at 530.)
Our neighboring State of New Jersey has recently confronted this issue. In State v Downie (supra), the court found that the new scientific challenges to the breathalyzer regarding the variability of the 2,100:1 breath-blood ratio were inadmissible thereby overruling State v McGinley (supra). The court held that in light of Romano v Kimmelman (96 NJ 66, 474 A2d 1 [1984]), which requires that judicial notice be given to breathalyzer test results in drunk driving prosecutions, the new evidence could only be offered to make a record for a future appeal. The New Jersey Supreme Court is presently considering the issue.
Until recently California cases have held that a defendant is presumed to have a 2,100:1 partition ratio in converting a breath reading to that of a blood alcohol reading absent evidence that the defendant’s personal ratio differs from the norm. (People v Herst, 197 Cal App 3d Supp 1, 243 Cal Rptr 83 [Super Ct, App Dept 1987]; People v Prichard, 162 Cal App 3d Supp 13, 209 Cal Rptr 314 [Super Ct, App Dept 1984].)
The appellate court in People v Prichard (supra) established a "rule of convenience” which placed the initial burden on the defendant to present evidence that his partition ratio deviated from the norm.
However, in People v McDonald (206 Cal App 3d 877, 254 Cal Rptr 384 [Ct of Appeal, 4th Dist 1988]) testimony was elicited that a person’s blood-to-breath partition ratio varies *274 over time. The expert witness for the defense disputed the idea that a defendant could measure his partition ratio. It would merely be speculative to say that the same ratio existed at the earlier time when the defendant was administered the breath test. This evidence directly contradicts the presumption that an individual’s partition ratio is constant and can be measured by the defendant.
The court in McDonald (206 Cal App 3d, supra, at 881, 254 Cal Rptr, supra, at 389) held: "[I]t was error to instruct the jury that it should presume McDonald had a 2100:1 partition ratio unless he presented evidence as to his personal ratio which either proved the contrary or raised a reasonable doubt * * *. The fact presumed by the instruction — constancy of one’s partition ratio — was in doubt. The resolution of that doubt was a factual question for the jury. ” (Emphasis added.)
3. DISCUSSION
New York State has judicially recognized the results of the breathalyzer since 1971. In People v Donaldson (36 AD2d 37 [4th Dept 1971]), the court affirmed a drunk driving conviction that relied on the admissibility of the breathalyzer. The court examined the operation of the breathalyzer test and held that it was no longer necessary to require expert testimony as to the nature, function or scientific principles underlying the instrument. Subsequent to Donaldson, .the Court of Appeals has held that " 'the scientific reliability of breathalyzers in general is no longer open to question”. (People v Alvarez, 70 NY2d 375, 380 [1987], quoting People v Mertz, 68 NY2d 136, 148 [1986], citing People v Gower, 42 NY2d 117 [1977].) This court is constrained to follow the well-settled law regarding the admissibility of the breathalyzer result.
The breathalyzer test is admissible where the People have laid the proper foundation.[2] However, the Court of Appeals in People v Mertz (68 NY2d 136 [1986], supra) ruled that a positive breathalyzer test establishes only a prima facie case and is not a per se evidence of guilt. The court stated: "It is, however, error not to permit defendant’s attorney to argue on the basis of evidence, whether through cross-examination of *275 the People’s witnesses or testimony of defendant’s witnesses, expert or other, from which it could be found that defendant’s BAG at the time of vehicle operation was less than .10%, that if the jury so found defendant was not guilty of violating the subdivision.” (Supra, at 189.)
In addition to the judicial recognition accorded to the results of a breath test to determine blood alcohol content, the Legislature has acknowledged its scientific reliability and provided for its admissibility at trial. (Vehicle and Traffic Law § 1195.)[3]
The court is not aware of any precedent for excluding evidence that has been judicially recognized as scientifically reliable. The issue raised concerning the blood-to-breath conversion ratio deals with the credibility of the breathalyzer test. It is for the trier of fact to resolve conflicts in the evidence, pass on credibility of witnesses, determine the plausibility of explanations and weigh the evidence. (People v Gaimari, 176 NY 84, 94 [1903]; People v Sorenson, 112 AD2d 1016 [2d Dept 1985]; State v Hvistendahl, supra.)
4. CONCLUSION
The court finds that the issue concerning the variation of an individual’s blood-to-breath conversion ratio is more properly addressed at trial where the defendant will have an adequate opportunity to challenge the validity and reliability of the breathalyzer result. The margin of error in the breathalyzer test should be considered by the trier of facts in deciding whether the evidence sustains a finding of guilt beyond a reasonable doubt. (State v Keller, 36 Wash App 110, 672 P2d 412 [1983].)
In conclusion the court holds that the blood-to-breath conversion ratio affects the credibility of the breathalyzer and not its admissibility. Defendants’ motions to preclude are denied.

. The court affirmed the defendant’s conviction finding that the error in considering the test result was harmless since there was sufficient additional proof of intoxication.

. The People v Donaldson court (36 AD2d 37) established the criteria for the admission of a breathalyzer result into evidence. This criteria requires: proof that the breathalyzer instrument was properly calibrated and maintained; establishment of the qualifications of the operator; and that the chemicals used in the test were of the proper kind, and mixed in the proper proportion.

. It must be noted that, although a majority of State’s drinking-driving laws, as in New York, limit references to alcohol concentrations to those in blood regardless of the specimen material actually analyzed, an increasing number of jurisdictions are adopting the definition of alcohol concentration of the Uniform Vehicle Code. It provides "Alcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath.” (Dubowski, Recent Developments in Alcohol Analysis, at 24.) In light of the emerging scientific studies and the developing litigation in the area, the New York State Legislature should consider enactment of similar statutory language.