303 N.J. Super. 47 (1997)
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD A. WARD, II, DEFENDANT, WILLIAM R. HUFF, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 7, 1997.
Decided July 3, 1997.
*49 Before Judges PETRELLA, LANDAU and KIMMELMAN.
Walder, Sondak & Brogan and Crummy, Del Deo, Dolan, Griffinger and Vecchione, attorneys for appellant (Jeffrey A. Walder, of counsel, and John J. Gibbons, of counsel, on the brief).
John B. Dangler, Morris County Prosecutor, attorney for respondent (Michael Jan, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal by William R. Huff, who had filed a number of complaints in Harding Township charging criminal offenses against the defendant, Edward A. Ward, II. As several of the complaints charged fourth degree indictable offenses, all of the complaints were referred to the Office of the Morris County Prosecutor.
Huff and his wife had pending at the same time a civil action against Ward and his wife. The Huffs' residential property includes a private road which is subject to an easement used by *50 the Wards to reach their house. As the result of disputes about the speed at which the Wards' vehicles traverse the easement, assertedly endangering the Huffs and their young children, the Huffs placed speed bumps on sections of the private road which had been paved by the Wards. Ward objected particularly to one speed bump and asked that it be removed. When Huff refused, it is asserted that Ward had the speed bump removed and the asphalt residue dumped off the road portion of Huff's property. The civil suit has reportedly produced numerous claims and counterclaims. The disputes are obviously bitter.
Huff's complaints, filed in Harding Township Municipal Court, charged violations of N.J.S.A. 2C:17-3(a)(1) and (2)(purposefully or knowingly damaging property of another and purposefully or recklessly tampering with property of another so as to endanger people or property); criminal trespass, in violation of N.J.S.A 2C:18-3; and violation of the Solid Waste Management Act, specifically N.J.S.A. 13:1E-9.3(a) and (b). The latter sections prohibit collection, transport or disposal of solid waste in excess of .148 cubic yards of solids except at an approved disposal site.
The criminal mischief complaints asserted damages in excess of $500, and accordingly would constitute fourth degree crimes under the N.J.Code of Criminal Justice (Code). The other complaints charged disorderly persons offenses.
Initially, the Morris County Prosecutor sent a form letter to Ward and to the Harding Township Municipal Court advising that the complaints had been administratively dismissed. The form utilized contained a check mark in the box entitled "civil court matter." Upon learning of this disposition, Huff's personal attorney, James A. Plaisted, Esq., wrote to the prosecutor requesting that the disorderly persons offenses be remanded to the municipal court rather than being dismissed. The prosecutor did not remand any of the complaints to the municipal court.
Thereafter, the Assignment Judge of Morris County entertained Huff's "motion", entitled under the summons numbers of *51 the respective complaints, for an order remanding the disorderly persons complaints to the municipal court and further, for an order vacating the prosecutor's administrative dismissal.[1]
Initially denied, the judge granted reconsideration and required the prosecutor to explore further the substance of the complaints and requested that the assistant prosecutor meet with Huff's attorney. Following the meeting between the prosecutor and Huff's private attorney, the prosecutor reaffirmed the decision to dismiss all charges.
The judge again entertained briefs and arguments. Several counsel appeared for Huff, and a letter-brief from a professor of an out-of-state law school was also submitted on his behalf. This letter-brief was later incorporated in the appendix before us.[2]
The judge concluded that the standard to be applied in considering the prosecutor's determination was whether it constituted a clear abuse of discretion. He found, following the prosecutor's compliance with the court's direction to meet with Huff's representative and more fully consider Huff's complaints, that there was compliance with the policy of the New Jersey Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to 4B-49. The judge further found that there was no clear abuse of discretion in the prosecutor's determination that the criminal complaints were more appropriately addressed in the pending civil actions, but that there was *52 "probable cause respecting each of the criminal complaints filed by William R. Huff against Edward A. Ward II." The final order affirmed the prosecutor's administrative dismissal of each of the five complaints.
On appeal, Huff argues that the judge erred in ruling that the county prosecutor had authority to dismiss the disorderly persons complaints when the complainant wished to pursue them in municipal court (Point I); that, assuming the prosecutor's authority to dismiss such complaints, the judge erred in applying an abuse of discretion standard rather than conducting an independent plenary review (Point II); that the prosecutor could not administratively dismiss environmental law complaints (Point III); and finally, that even if an abuse of discretion standard was proper, the judge erred in concluding that the discretion had not been abused (Point IV).
We have considered carefully these arguments in light of the record and applicable law, and affirm, substantially for the reasons set forth by Judge Stanton in the oral opinion and colloquy of the hearing of August 6, 1996. We add these comments.

I.
As to the prosecutor's authority to dismiss disorderly persons complaints, Judge Stanton's conclusion is supported by the picture of broad prosecutorial authority that emerges from a comprehensive reading of New Jersey statutes, court rules and cases. There is undisputedly a remaining role for private prosecutions of disorderly persons complaints, but that role has been restricted by New Jersey courts in recognition that the criminal laws exist to protect the public's interest rather than to afford vindication of private property rights or personal grievances.
While these public and private interests may frequently coincide, the Attorney General and the county prosecutors have been designated to prosecute the criminal business of the State, N.J.S.A. 2A:158-4, and to exercise the discretion whether to prosecute or to refrain from prosecution. State v. Hermann, 80 *53 N.J. 122, 127, 402 A.2d 236 (1979); State v. Mitchell, 164 N.J. Super. 198, 201, 395 A.2d 1257 (App.Div. 1978).
In State v. Downie, 117 N.J. 450, 569 A.2d 242, cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990), the authority of the Monmouth County Prosecutor to intervene in on-going municipal court cases was recognized by the Supreme Court. Earlier, in State v. Downie, 229 N.J. Super. 207, 550 A.2d 1313 (App.Div. 1988), affirmed by the Supreme Court, we said:

N.J.S.A. 2A:158-4 and 5 give the Attorney General and county prosecutors plenary jurisdiction to prosecute all criminal matters in this State. It is clear from the wording of N.J.S.A. 2A:158-5 that the words "criminal business" in § 4 are not limited to crimes, but include the prosecution of "offenders against the law." Cf. R. 3:23-9.
[Downie, supra, 229 N.J. Super. at 209 n. 1, 550 A.2d 1313.]
N.J.S.A. 2A:158-4 provides that "criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors".[3]N.J.S.A. 2A:158-5 provides that:
Each prosecutor shall be vested with the same powers and be subject to the same penalties, within his county, as the attorney general shall by law be vested with or subject to, and he shall use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws.
*54 Inasmuch as the prosecutor has been vested with the powers of the Attorney General, the powers of the latter official must also be explored. N.J.S.A. 52:17b-107a provides:
Whenever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding, (2) participate in any investigation, criminal action or proceeding, or (3) initiate any investigation, criminal action or proceeding. In such instances, the Attorney General may appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary to promote and safeguard the public interests of the State and secure the enforcement of the laws of the State.
N.J.S.A. 52:17B-103 provides in part:
The Attorney General shall consult with and advise the several county prosecutors in matters relating to the duties of their office and shall maintain a general supervision over said county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State.
Under N.J.S.A. 2A:158-5, since the county prosecutor has the same powers as the Attorney General, the county prosecutor also has general supervisory power over municipal prosecutors. Cf. Kershenblatt v. Kozmor, 264 N.J. Super. 432, 437-439, 624 A.2d 1042 (Law.Div. 1993). This is confirmed by the recently-enacted N.J.S.A. 2B:12-27, which places municipal prosecutors under supervision of "the Attorney General or county prosecutor."
Several Court Rules also support the conclusion that the prosecutor's broad authority in municipal prosecutions includes the right to dismiss.
Rule 3:23-9, governing appeals to the Law Division from courts of limited jurisdiction, provides that the prosecuting attorney in such appeals shall be "the municipal attorney, in a case involving a violation of a municipal ordinance," but shall be "the county prosecutor in all other cases." Thus, the prosecutor has exclusive jurisdiction to represent the State in appeals from municipal court, subject to R. 3:23-9(d).
As noted in Pressler, Current New Jersey Court Rules, comment 4 to R. 3:23-9(d)(1997), the provision that "[w]ith the consent of the court, the attorney for a complaining witness ... may be *55 permitted to act for the prosecuting attorney", was added to the rules "for the purpose of making clear that in no event shall the attorney for the complaining witness be deemed the prosecuting attorney unless the court, with the consent of the prosecuting attorney permits him to so act." Inasmuch as the review from a municipal conviction is a trial de novo on the record, subject in some cases to further supplementation, R. 3:23-8, the county prosecutor clearly has a substantial interest in determining which cases shall be prosecuted.
The fact that participation by the county prosecutor in municipal court is contemplated by the Rules of Court is also borne out by R. 7:4-8(b), which provides that plea agreements will be "allowed in any municipal court in cases handled by the Office of the Attorney General or the County Prosecutor." Similarly, R. 7:4-2(f), a rule dealing with proceedings before trial, provides for motions to suppress in municipal court in any case "in which the Attorney General, county prosecutor, or municipal prosecutor is prosecuting attorney on behalf of the State and on notice to said prosecutor."
The Guidelines for Operation of Plea Agreements that follow R. 7:4-8 provide:
GUIDELINE 3. Prosecutor's Responsibilities. Nothing in these Guidelines should be construed to affect in any way the prosecutor's discretion in any case to move unilaterally for an amendment to the original charge or a dismissal of the charges pending against a defendant if the prosecutor determines and represents on the record the reasons in support of the motion.
[Emphasis added.]
The official Comment to the R. 7:4-8 Guidelines is illuminating. It states, in pertinent part, that:
Plea agreements are to be distinguished from the discretion of a prosecutor to charge or unilaterally move to dismiss, amend or otherwise dispose of a matter.... The prosecutor is not an ordinary advocate. Rather, the prosecutor has an obligation to defendants, the State and the public to see that justice is done and truth is revealed in each individual case.
We reject Huff's contention that State v. Labato, 7 N.J. 137, 80 A.2d 617, (1951) has conclusively held that a county prosecutor *56 does not have the power to dismiss non-indictable offenses. The precise language relied on is:
The Police Court was not deprived of jurisdiction by the course taken by the County Prosecutor. The grant of jurisdiction is not thus conditioned. Neither R.S. 2:182-4, N.J.S.A., placing the prosecution of the criminal business of the State in the hands of the County Prosecutor, nor Rule 8:3-3(d) of this Court is directed to that end. Both have reference to indictable offenses, and not to prosecutions under the Disorderly Persons Act. This dual authority in matters of law enforcement undoubtedly gives rise to policy and administrative difficulties; but the remedy lies with the Legislature.
[Labato, supra, 7 N.J. at 151, 80 A.2d 617].
Reliance upon Labato is misplaced for two reasons. First, the prosecutor there had never sought to dismiss the prior prosecution in Police Court which was asserted as the basis for a double jeopardy defense. Instead, the county prosecutor had merely made an unsuccessful demand by way of objection that the defendant "be prosecuted under the Crimes Act". Id. at 142, 80 A.2d 617. Thus, the comment respecting R.S. 2:182-4 (predecessor to N.J.S.A. 2A:158-4) was at most dictum in the severely split Labato opinion. Second, and more importantly, there have been substantial statutory and court rule changes (as invited by the Court) since the questionable dictum in Labato. Among these changes has been enactment of the Code. Under the Code, the word "offense" includes crimes as well as lesser disorderly persons offenses. N.J.S.A. 2C:1-14k. Thus, as we noted in State v. Downie, supra, 229 N.J. Super. at 209 n. 1, 550 A.2d 1313, the vesting of powers in the prosecutor under N.J.S.A. 2A:158-5 respecting "offenders against the laws" includes all "criminal business", i.e., all "offenses", including disorderly persons violations.
We do not intend to suggest that there is no role for pro se prosecutions of disorderly persons offenses or for private prosecutions, when duly authorized. We emphasize merely that the determination of whether a matter should or should not be criminally prosecuted is fundamentally an executive determination delegated to the Attorney General and the county prosecutors. If the prosecutor arbitrarily or corruptly fails or refuses to act, the *57 courts must then intervene to correct the administrative abuse. In re Ringwood Fact Finding Comm., supra, 65 N.J. at 516-517, 324 A.2d 1; State v. Winne, 12 N.J. 152, 172, 96 A.2d 63 (1953). The duty of a prosecuting officer necessarily requires that in each case he examine the available evidence, the law and the facts, and the applicability of each to the other, and that he intelligently weigh the chances of successful termination of the prosecution, having always in mind the relative importance to the county he serves of the different prosecutions which might be initiated. Such duties necessarily involve a good faith exercise of sound discretion. State v. Winne, 12 N.J. at 172-173, 96 A.2d 63 (citing State ex rel. McKittrick v. Wallach, 353 Mo. 312, 182 S.W.2d 313 (1944)); see also State v. Childs, 242 N.J. Super. 121, 129-130, 576 A.2d 42 (App.Div.), certif. denied, 127 N.J. 321, 604 A.2d 596 (1990). Rule 7:4-4(b) allows a complaining witness who was the victim of a disorderly persons offense to enforce the criminal law in cases where the prosecutor has failed to act. See, e.g., New Jersey v. Imperiale, 773 F. Supp. 747 (D.N.J. 1991); New Jersey v. Kinder, 701 F. Supp. 486, 488 (D.N.J. 1988). However, in the present case, based upon the competent directions of the judge, the prosecutor did not fail to act, rather, the prosecutor investigated further and exercised his authority to dismiss.
In evaluating the prosecutor's determination, Judge Stanton was evidently also conscious of his duty in private prosecutions to be satisfied of an entirely impartial, dispassionate and fair prosecution by a neutral prosecuting attorney. State v. Storm, 141 N.J. 245, 252-255, 661 A.2d 790 (1995).
The Supreme Court has recently recognized the discretionary authority of the prosecutor in determining whether or not to prosecute disorderly persons offenses in the municipal court, see State v. Hessen, 145 N.J. 441, 452-453, 678 A.2d 1082 (1996), subject to review of the prosecutor's discretion for arbitrariness or abuse. The Hessen Court invoked its authority to restrict exercise of prosecutorial discretion in drinking and driving cases, noting however, that this was necessary to support policy decisions *58 of the legislative and executive branches, thereby avoiding a separation of powers violation. Id. at 454, 678 A.2d 1082.
In sum, the county prosecutor's discretion as to whether to prosecute or dismiss extends to disorderly persons offenses, but is subject to the judicial power to correct an abuse of discretion.

II.
Huff urges on appeal that it is no longer appropriate for the judiciary to review the exercise of prosecutorial discretion in a case such as this under the traditional abuse-of-discretion standard. He suggests that proper recognition of the rights of crime victims articulated in recent constitutional and legislative provisions[4], requires that court review of a prosecutorial determination to prosecute or not be conducted as a plenary, de novo proceeding.
As we noted above, in State v. Hessen the Supreme Court has again recognized that the appropriate standard for review of a prosecutor's independent decision-making authority not to prosecute is that of "arbitrariness or abuse." Id. at 452-453, 678 A.2d 1082. Of course, where the subject is one of far-reaching public interest such as curtailing drunk driving, manifested by policy decisions of the executive, legislative and judicial branches of government, the Court has not hesitated to insist upon rigorous enforcement. Id. at 457-459, 678 A.2d 1082. Such a palpable and paramount public interest is not here apparent. Moreover, comprehensive vindication of the asserted private rights is available in the pending private action through injunctive relief and damages. The private action may possibly establish sufficient basis for *59 punitive damages as well, thereby, together with such injunctive relief as might be deemed appropriate, addressing public concerns.
To the extent that the Huff appeal suggests that a complainant in a disorderly persons offense matter has a right to a more intense review of a prosecutor's decision to dismiss than the victim of an indictable crime, we reject the argument as incongruous and unfounded. While impact on the victim may be an important policy factor for consideration as to propriety of an administrative dismissal, this does not equate with a requirement to change the standard of review. Moreover, both the N.J. Constitution, art. I, ¶ 22, and the Crime Victims' Bill of Rights (CVBR) each address only victims of a "crime". Even if we disregard the differences between a crime and the less serious category of disorderly persons offense set forth in N.J.S.A. 2C:1-4, there is surely no warrant suggested by ¶ 22 or the CVBR for us to afford to victims of lesser offenses greater rights than are afforded to victims of offenses which have been designated as "crimes".
In this case, the judge saw to it that Huff had an opportunity to fully set forth his position respecting the alleged offenses before prosecutorial representatives. See N.J.S.A. 52:4B-36(m)(requiring only consideration by the prosecutor) and State v. Kraft, 265 N.J. Super. 106, 116-17, 625 A.2d 579 (App.Div. 1993)(recognizing "great deference" to be afforded to the prosecutor's decision whether or not to aggressively prosecute). With respect to disorderly persons offenses, as with indictable offenses, there is judicial responsibility to ensure unbiased, impartial prosecution in vindication of the public interest and, where the prosecutor has determined to dismiss a complaint, to ensure that such dismissal does not constitute a clear abuse of discretion.
Mindful of Huff's argument that a prosecutor has no authority to dismiss complaints that charge environmental violations, we add that presence or absence of mens rea as an element of environmental offenses is not a factor bearing upon either the *60 authority of the prosecutor to dismiss such complaints or upon the standard of judicial review to be applied to the dismissal.

III.
We turn finally to the challenge to Judge Stanton's ruling that, notwithstanding existence of sufficient probable cause for each of the complaints, the prosecutor's exercise of discretion to dismiss was not arbitrary. In doing so, it is appropriate to recall what we said in State v. Kraft, supra:
Unquestionably, policy determinations, such as which offenses to aggressively prosecute, fall within the domain of the prosecutor, not the judiciary. State v. Dalglish, supra, 86 N.J. at 511, 432 A.2d 74. This stems primarily from the fact that it is the fundamental responsibility of the prosecutor to decide whom to prosecute. Id. at 509, 432 A.2d 74; Leonardis II, supra, 73 N.J. at 381, 375 A.2d 607. Additionally, as noted above, once such a decision has been made, it is entitled to great deference. See, e.g., State v. DeMarco, supra, 107 N.J. at 566, 527 A.2d 417; State v. Dalglish, supra, 86 N.J. at 509, 432 A.2d 74; State v. Bender, supra, 80 N.J. at 89, 402 A.2d 217; Leonardis II, supra, 73 N.J. at 381, 375 A.2d 607; State v. Hoffman, supra, 224 N.J. Super. at 155, 539 A.2d 1254; State v. Litton, supra, 155 N.J. Super. at 212, 382 A.2d 664.
[Kraft, supra, 265 N.J. Super. at 116-117, 625 A.2d 579.]
We identify at least three factors present here that satisfy us that the prosecutor's action was not arbitrary under this deferential standard of review.
First, the pending civil lawsuit was adequate to provide private redress, the possibility of punitive damages for willful wrongdoing, and injunctive correction of an adverse public or private impact from Ward's alleged misconduct.
Second, "private prosecutions pose the risk that the complainant will use the municipal court proceeding to harass the defendant or to obtain an advantage in a related civil action." State v. Storm, supra, 141 N.J. at 253, 661 A.2d 790; New Jersey v. Bazin, 912 F. Supp. 106 (D.N.J. 1995); New Jersey v. Imperiale, 773 F. Supp. 747, 748-749 (D.N.J. 1991). There is a strong governmental interest in dispassionate assessment of the propriety of criminal charges, particularly where there is a pending civil case which might benefit from the criminal prosecution. Young v. United *61 States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).
Third, where the interests involved are predominantly private, and the pubic interest is not great, limiting the private complainant to available tort and equitable remedies does not constitute an abuse of prosecutorial or judicial discretion. In this regard we note that, while asphalt may be deemed solid waste, we have found no statutory or regulatory indication that the materials described as having been pushed from the roadway constitute hazardous or toxic substances. See N.J.A.C. 7:1E-10. Asphalt is defined as "a brown to black bituminous substance that is found in natural beds and is also obtained as a residue in petroleum refining ..." Webster's Ninth New Collegiate Dictionary. N.J.A.C. 7:1E, which treats with discharges of petroleum or petroleum products, refers to liquid products and the hazardous substances listed in Appendix A to N.J.A.C. 7:1E-10. As indicated, asphalt paving material does not appear to fall into this category. Thus, the public environmental interest might reasonably be regarded as not particularly significant.

Conclusion
The order under review is affirmed. We note that there was no cross appeal, and that in consequence, the decretal paragraph which determined that Huff had probable cause to file each of the criminal complaints is embraced by this affirmance.
NOTES
[1] The parties have raised no question of Huff's standing to file the motion. In some ways that issue is related to the principal issues we discuss infra in this opinion. We believe that the alleged victim of a criminal offense, who is asserting a public interest in its prosecution, has a sufficient stake in the outcome to seek to invoke a review of the exercise of prosecutorial discretion in selecting matters for prosecution or dismissal. Although not specifically so designated, this would seem to be an action in lieu of prerogative writs. See In re Ringwood Fact Finding Comm., 65 N.J. 512, 516-517, 324 A.2d 1 (1974); also Elizabeth Federal Savings & Loan v. Howell, 24 N.J. 488, 500-502, 132 A.2d 779 (1957)(standing of interested persons to challenge administrative action).
[2] The letter-brief should not have been accepted without pro hoc vice application and admittance of counsel. We note that Huff's briefs rely in part on the contents of the letter-brief.
[3] In Morss v. Forbes, 24 N.J. 341, 132 A.2d 1 (1957), the Court reviewed the development of the Office of County Prosecutor, tracing it through its roots in the powers of the attorney general.

The Court noted that:
At common law in England, the attorney general was the chief legal representative of the Crown, and in theory his powers of criminal prosecution were almost unlimited. As a practical matter, however, the responsibility for securing enforcement of the criminal laws was left largely in the hands of private parties. See State v. Winne, 12 N.J. 152, 164-165, 96 A.2d 63 (1953). This distinction, if it ever received any recognition in the Colony of New Jersey, perished long before the Revolution, and the attorney general commonly undertook to prosecute "culprits from minor offenders to murderers." Journal of the Courts of Common Right and Chancery of East New Jersey, 1683-1702 (Edsall ed. 1937), 3 and passim. See State v. Winne, supra. Public prosecution supplanted private prosecution, and, consequently, at the time of the adoption of the Constitution of 1776, the first attorney general of the State of New Jersey possessed and assumed considerable powers of law enforcement.
[Morss, supra, 24 N.J. at 364-365, 132 A.2d 1.]
[4] N.J. Const., art. I, ¶ 22 adopted November 5, 1991, defines a "victim" as a person who "has incurred loss of or damage to personal or real property as a result of a crime". Included among the rights enumerated in N.J.S.A. 52:4B-36 is the following:

m. To submit a written statement about the impact of the crime to a representative of the county prosecutor's office which shall be considered prior to the prosecutor's final decision concerning whether formal criminal charges will be filed.