870 A.2d 704 (2005)
376 N.J. Super. 405
Charles F. GEROFSKY, as President, Officer, Director and Member of the New Jersey Society for the Prevention of Cruelty to Animals, Plaintiff,
v.
PASSAIC COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, Defendant/Third-Party Plaintiff, and
Bergen County Society for the Prevention of Cruelty to Animals, Defendant/Third-Party Plaintiff/Intervenor-Appellant, and
Hunterdon County Society for the Prevention of Cruelty to Animals, Middlesex County Society for the Prevention of Cruelty to Animals, Morris County Society for the Prevention of Cruelty to Animals, Union County Society for the Prevention of Cruelty to Animals, and Warren County Society for the Prevention of Cruelty to Animals, Defendants/Third-Party Plaintiffs/Intervenors,
v.
New Jersey Society for the Prevention of Cruelty to Animals, Third-Party Defendant/Respondent.
Bergen County Prosecutor's Office, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 2005.
Decided April 14, 2005.
*705 Dennis J. Oury argued the cause for appellant (Sylvia Hall, on the brief).
Harry Jay Levin argued the cause for respondent New Jersey Society for the Prevention of Cruelty to Animals (Levin & Cyphers, attorneys; Mr. Levin, on the brief).
Catherine A. Foddai, Assistant Prosecutor, argued the cause for respondent Bergen County Prosecutor's Office (John L. Molinelli, Bergen County Prosecutor, attorney; Ms. Foddai, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for amicus curiae New Jersey Attorney General (Mary E. McAnally, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, PARRILLO and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
In the middle of the nineteenth century, at a time when New Jersey had only limited *706 state law enforcement agencies and law enforcement was frequently entrusted to private citizens, the Legislature enacted laws that created the New Jersey and county Societies for the Prevention of Cruelty to Animals (SPCAs) and delegated extensive law enforcement powers relating to the prevention of cruelty to animals to these private groups. Since that time, the people of New Jersey have adopted constitutional provisions and the Legislature has enacted statutes that assign comprehensive responsibility to the Attorney General and county prosecutors for the enforcement of all laws. The issue presented by this appeal is whether the SPCAs' exercise of law enforcement powers is subject to the supervision and control of the county prosecutors. We conclude that a county prosecutor's constitutional and statutory authority to supervise all law enforcement in the county includes the authority to supervise and control SPCA members who exercise law enforcement powers.
Before outlining the procedural history of this case and discussing the constitutional and statutory provisions that govern our decision, we note that both the State Commission of Investigation (SCI) and a Task Force appointed by the Governor have issued reports that criticize the current operations of the SPCAs and recommend either repeal or substantial modification of the statutes that confer law enforcement authority upon these private groups.
In a report issued in December 2000, the SCI concluded that the statutes that "place[] the enforcement of animal cruelty laws in the hands of unsupervised, volunteer groups of private citizens" constitute an "archaic legislative scheme" that should be repealed:
[T]he SPCAs represent a rudimentary system that has not kept pace with the state's advancements in law enforcement or its interest in the welfare of animals. Against the backdrop of a highly stratified and professional law enforcement system, it is an anomaly that the state continues to empower organizations of private citizens to carry weapons, investigate criminal and civil conduct, enforce laws, issue summonses, effect arrests and obtain and execute search warrants. The issue is no longer whether or how to fix this errant group of self-appointed, self-directed and uncontrolled entities, but whether to eliminate the archaic system entirely. The Commission concludes that the time has come to repeal the government authority vested in the SPCAs and place the function of enforcing the cruelty laws within the government's stratified hierarchy of law enforcement.
[State of N.J. Comm'n of Investigation, Societies for the Prevention of Cruelty to Animals 1 (2000).]
In a report issued in November 2004, the Governor's Task Force declined to endorse the SCI's recommendation that the SPCAs' enforcement powers should be repealed in their entirety. However, the Task Force recommended repeal of the statutes that confer authority upon SPCA officers to carry deadly weapons and exercise arrest powers and enactment of new statutes that would require SPCA officers to obtain State certification and subject their exercise of law enforcement powers to the supervision and control of sworn law enforcement officers:
The Task Force, after careful consideration of the findings and recommendations of the SCI Report, recommends retention of the SPCA's humane officers in the enforcement structure, but subject to State oversight and certification and with certain limitations on their prior authority to affect arrests and carry firearms. That is, rather than *707 eliminate the SPCA as an animal cruelty law enforcement mechanism, the Task Force offers recommendations to provide appropriate uniformity, standards, training, oversight and accountability for the SPCA, utilizing the resources and manpower available to promote animal welfare, while appropriately limiting the authority accorded to such private, volunteer entities engaged in law enforcement activities (such as the authority to carry and use firearms and arrest powers).
....
A requisite element for SPCA officers to perform in an enforcement capacity would be State certification, which would require the applicant to demonstrate that he or she has met appropriate minimum qualifications in areas such as training ..., education..., relevant experience, good health ..., good moral character and other criteria deemed relevant to the performance of such enforcement duties.
[Animal Welfare Task Force, Report 38-39, 47 (2004).][1]
The case that brings the issue of the county prosecutors' authority to supervise the SPCAs' law enforcement activities before this court has a convoluted procedural history. Subsequent to issuance of the SCI report criticizing the SPCAs' operations, the then President of the State SPCA, Charles F. Gerofsky,[2] brought an action in the Chancery Division that sought revocation of the certificate of authority of the Passaic County SPCA. The complaint referred to the SCI's criticism of the Passaic SPCA's record-keeping and other problems with its operations. The complaint alleged that the Passaic SPCA had failed to comply with new record-keeping and reporting requirements the State SPCA had imposed on the county SPCAs after issuance of the SCI report. The complaint also alleged that the Passaic SPCA had continually failed to investigate and prosecute animal cruelty complaints. In addition, the complaint stated that the State SPCA had revoked the Passaic SPCA's certificate of authority, as it is authorized to do under N.J.S.A. 4:22-5, but that the Passaic SPCA had refused to surrender the certificate of authority, and that its officers were continuing operations, including carrying guns without the required permits.
Shortly after the President of the State SPCA brought this action, six other county SPCAs, including the Bergen SPCA, moved to intervene and join in the Passaic SPCA's counterclaim against the President of the SPCA and third-party complaint against the State SPCA. The counterclaim-third-party complaint alleged that the State SPCA does not have authority to supervise the ongoing activities of the county SPCAs and that Gerofsky and the State SPCA had exceeded their statutory authority and acted unreasonably in imposing enhanced record-keeping and reporting requirements upon the county SPCAs. The counterclaim-third-party complaint further alleged that the State SPCA and Gerofsky had wrongfully revoked the certificate of authority of the Passaic SPCA and also threatened revocation of the certificates of the other county SPCAs for failing to comply with these new requirements.
*708 The trial court granted a motion by the Passaic County SPCA to stay the revocation of its certificate of authority pending a final determination regarding the propriety of the State SPCA's action. The court also granted the motion by the other county SPCAs, including Bergen, to intervene. Thereafter, the court granted Gerofsky's motion to add counts to the complaint seeking revocation of the certificates of authority of the Bergen and Middlesex County SPCAs. The court also enjoined the State SPCA from revoking those certificates pending a final determination of the propriety of such action.
Gerofsky then filed an amended complaint that contained allegations concerning the operations of the Bergen and Middlesex SPCAs similar to the allegations of the original complaint regarding the Passaic SPCA. With specific reference to the Bergen SPCA, the amended complaint alleged, among other things, that the "[Bergen SPCA] has allowed numerous members, possibly as many as forty (40), many of whom do not live in Bergen County, to become officers, which would purportedly authorize such people to carry firearms" and that the "[Bergen SPCA] has violated gun laws by allowing its officers to carry firearms without being exempted from gun permits requirements and by allowing its officers to carry firearms at times other than actual performance of duties."
During the pendency of this case, the Bergen County Prosecutor issued a directive on June 11, 2003, which suspended "all law enforcement functions currently undertaken by members of [the Bergen SPCA]." Simultaneously, the Prosecutor sent a memorandum to all Bergen County chiefs of police, the Bergen County Sheriff and other county law enforcement officials which stated that his intent in suspending the Bergen SPCA was to "gain control over the manner in which investigations, surveillance and arrests are made, and firearms used [in animal cruelty cases]." The memorandum also indicated that the suspension of the law enforcement functions of the Bergen SPCA was temporary and that the Prosecutor anticipated "appointing four or five individuals qualified to serve as agents under Title 4 ... to undertake responsibility for animal control matters."
After the Prosecutor issued this directive and memorandum, his office had discussions with individual members of the Bergen County SPCA regarding the investigation of animal cruelty complaints in Bergen County. As a result of those discussions, the Prosecutor prepared a memorandum of understanding (MOU), which was later executed by the Prosecutor and individual Bergen SPCA members who are interested in continuing to participate in the investigation of animal cruelty complaints under the Prosecutor's supervision. Under the MOU, those SPCA members are required to complete a forty-five-hour course relating to animal control investigations approved by the Police Training Commission, a forty-hour course regarding the responsibilities of animal control officers and an eighty-hour course in firearms at the Bergen County Police and Fire Academy. The SPCA members who agree to these requirements will be appointed to the Bergen County Prosecutor's Office Animal Cruelty Task Force and will be authorized, upon satisfaction of the training requirements and passing a background check, to exercise all law enforcement powers set forth in Title 4, at which point such members will be designated "Animal Cruelty Investigators." The MOU provides that these members of the Bergen SPCA shall no longer be subject to the June 11, 2003 directive that suspended the Bergen *709 SPCA's law enforcement functions.[3] The MOU requires Animal Cruelty Investigators to submit monthly reports to the Prosecutor regarding the cases to which they are assigned. The MOU also provides that Animal Cruelty Investigators may carry firearms only when "they are actually engaged in an animal cruelty investigation under title 4 of the New Jersey statutes and in the actual course of that investigation."
In March 2004, around the same time as the execution of the MOU, the State SPCA applied to the trial court, by order to show cause, for an order revoking the certificate of authority of the Bergen SPCA. In support of this application, the State SPCA relied upon the June 11, 2003 directive of the Bergen County Prosecutor suspending the law enforcement functions of the Bergen SPCA.
In response to the State SPCA's application to revoke the Bergen SPCA's charter, the Bergen County Prosecutor filed a certification together with a copy of the MOU. The Prosecutor indicated that, in his judgment, the MOU "will ... bring effective and appropriate controls for all [animal cruelty] law enforcement matters ... in Bergen County." The Prosecutor also noted: "In the event that the Court `revokes' the Charter of the [Bergen SPCA], then the individuals that have agreed to abide by the terms of the aforementioned [MOU] will no longer have any law enforcement powers under Title 4 and will, therefore, be precluded from participating as an animal cruelty investigator in Bergen County under the MOU."
The trial court concluded in an oral opinion that the Bergen County Prosecutor's June 13, 2003 directive suspending the exercise of law enforcement functions by the Bergen SPCA rendered that organization substantially and materially incapable of carrying out its statutory duties and therefore provided the "cause" required by N.J.S.A. 4:22-5 for the State SPCA to revoke the Bergen SPCA's certificate of authority. Accordingly, the court entered an order revoking the certificate and directing that "all animal complaint calls" in Bergen County be "transferred" to the State SPCA.
We granted the Bergen County SPCA's motion for leave to appeal from this order and for a stay pending the outcome of the appeal. In addition, on our own motion, we joined the Bergen County Prosecutor as a respondent to the appeal. We also directed the parties to serve copies of all papers on the Attorney General to afford him an opportunity to determine whether to participate in the appeal. Our order allowed the trial court to continue proceedings with respect to parties other than the Bergen SPCA.
We subsequently granted the Attorney General's motion for leave to participate in the appeal as amicus curiae. The Attorney General takes the position that a county prosecutor has constitutional and statutory authority to oversee all law enforcement activities within the county, including enforcement of the provisions of Title 4 governing cruelty to animals, and that the MOU issued by Prosecutor Molinelli constitutes a proper exercise of that authority. The Attorney General also contends that the order of the trial court revoking the Bergen SPCA's certificate of authority and directing that all animal cruelty complaints be transferred to the State SPCA undermines Prosecutor Molinelli's *710 exercise of his supervisory power over enforcement of animal cruelty laws in Bergen County and should be reversed. We agree with the Attorney General's position and therefore reverse the preliminary injunction entered by the trial court.
In 1868, the Legislature created "`the New Jersey Society for the Prevention of Cruelty to Animals' ... for the purpose of the enforcement of all laws enacted for the protection of dumb animals." N.J.S.A. 4:22-1; L. 1868, c. 335, § 1. The State Society is authorized to "[e]nforce all laws or ordinances enacted for the protection of dumb animals," N.J.S.A. 4:22-3(d), and "[t]he police forces of all places where such organizations exist, shall, as occasion may require, aid the society, its members, officers or agents, in the enforcement of all laws enacted for the protection of dumb animals," N.J.S.A. 4:22-4. In 1873, the Legislature enacted legislation that authorized the president of the State society to "appoint in the several counties of this state, as many persons as he shall deem fit, to ... organize in the county where they reside, district societies for the purpose of the enforcement of all laws ... enacted for the protection of dumb animals." L. 1873, c. 311, § 1; N.J.S.A. 4:22-5. This legislation, as amended by L. 1893, c. 260, § 1, provides that "[s]uch [a county] society shall be organized under and by virtue of a certificate of authority issued by the president of the [State SPCA], which certificate may be revoked by said president at any time for cause." This legislation also provides that a county SPCA "shall have the same rights, powers and privileges as are vested in the [State SPCA]." N.J.S.A. 4:22-9; L. 1908, c. 148, §§ 1, 4. Thus, the Legislature has authorized both the State SPCA and county SPCAs to enforce laws enacted for the protection of "dumb animals." However, nothing in Title 4 indicates that the SPCAs' law enforcement powers with respect to such laws are exclusive.
In enforcing Title 4, any member, officer or agent of the State SPCA may arrest a violator with or without a warrant if the violation occurs in his or her presence. N.J.S.A. 4:22-44. Moreover, any agent of the State SPCA may enter any place where there is an exhibition of fighting or baiting of a live animal or where preparations for such an exhibition are being made, and arrest everyone inside without a warrant and take possession of the animals and any items being used in the exhibition. N.J.S.A. 4:22-47. These statutory provisions continue in substantially the same form today as when they were enacted in the nineteenth century.
In addition to the sections of Title 4 prescribing the powers of the State and county SPCAs, N.J.S.A. 2C:39-6(c)(7) and N.J.S.A. 2C:39-6(j) provide that SPCA officers who satisfactorily complete a firearm training course approved by the Police Training Commission may possess a firearm while in the actual performance of their duties without obtaining the firearms permits required under N.J.S.A. 2C:58-3 and -4.
A county prosecutor is a constitutional officer, who is "nominated and appointed by the Governor with the advice and consent of the Senate." N.J. Const. art. VII, § 2, ¶ 1. N.J.S.A. 2A:158-4 provides that "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors," and N.J.S.A. 2A:158-5 provides that "[e]ach prosecutor shall be vested with the same powers ..., within his county, as the attorney general shall by law be vested with[.]" In addition, N.J.S.A. 52:17B-112(b) provides that "[i]t shall be the duty of the police officers of the several counties and municipalities of this State and all other law enforcement officers to cooperate with *711 and aid the Attorney General and the several county prosecutors in the performance of their respective duties."
Under these constitutional and statutory provisions, a county prosecutor is "the chief law enforcement officer in the county." Falcone v. De Furia, 103 N.J. 219, 226, 510 A.2d 1174 (1986). As the county's chief law enforcement officer, the prosecutor has ultimate responsibility for the investigation and prosecution of all criminal offenses including disorderly persons and motor vehicle offenses. See State v. Ward, 303 N.J.Super. 47, 52-58, 696 A.2d 48 (App.Div.1997); State v. Downie, 229 N.J.Super. 207, 209 n. 1, 550 A.2d 1313 (App.Div.1988), aff'd, 117 N.J. 450, 569 A.2d 242, cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L. Ed.2d 38 (1990). Consequently, "the county prosecutor ... has general supervisory power over municipal prosecutors." Ward, supra, 303 N.J.Super. at 54, 696 A.2d 48. The prosecutor also has broad supervisory authority over the operations of municipal police departments. See Cherrits v. Vill. of Ridgewood, 311 N.J.Super. 517, 530-31, 710 A.2d 586 (App.Div.1998).
Our Supreme Court has described the prosecutor's ultimate responsibility for all law enforcement activity in expansive terms:
Clearly the Legislature intended to give [the county prosecutor] dominant position and the primary responsibility for the enforcement of the criminal laws....
....
... It is a matter of common knowledge that the local law enforcement authorities from the chanceman on his beat to the chief of police and beyond him to the director of public safety are responsive to the county prosecutor's concept of law enforcement on pain of possible indictment if they do not cooperate with him in enforcing the law. He does not stand alone. He is in a position to command the cooperation of all the law enforcing authorities in the county. He is amply equipped for the performance of his indispensable task, if law and order are to be maintained in the county and all our rights both of person and of property are to be adequately safeguarded.
[State v. Winne, 12 N.J. 152, 167-69, 96 A.2d 63 (1953).]
We are satisfied that the county prosecutor's supervisory authority over all law enforcement activity in the county extends not only to sworn county and municipal prosecutors and police officers but also to any member of an SPCA to whom law enforcement powers are delegated under Title 4. The offenses proscribed under Title 4 include both disorderly persons and third and fourth degree offenses. See, e.g., N.J.S.A. 4:22-17 (classifying animal cruelty as a third or fourth degree or disorderly persons offense depending on the circumstances); N.J.S.A. 4:22-24 (classifying the use of animals for fighting or baiting as a third degree offense). Thus, the investigation and prosecution of such offenses is part of the "criminal business of the State," for which the Attorney General and county prosecutors are assigned primary responsibility under N.J.S.A. 2A:158-4 and -5, and an SPCA member who investigates such an offense under the powers delegated to the SPCA is one of the "other law enforcement officers" referred to in N.J.S.A. 52:17B-112(b). As such, any SPCA member exercising law enforcement powers must "cooperate with and aid ... the ... county prosecutor[] in the performance of [his] ... duties." Ibid. Therefore, we conclude that a county prosecutor's statutory authority to supervise all law enforcement in the county includes the authority to supervise and control SPCA *712 members who exercise law enforcement powers.[4]
We also conclude that the MOU issued by the Bergen County Prosecutor and agreed to by individual members of the Bergen SPCA constitutes a valid exercise of the county prosecutor's broad supervisory authority over SPCA members who exercise the law enforcement powers delegated to SPCAs under Title 4.[5] The MOU is designed to assure that any person who exercises these powers is properly trained and supervised. To that end, the MOU requires any SPCA member who desires to participate in law enforcement activity to complete from one hundred and twenty-five to one hundred and sixty-five hours of training in animal control investigations, the responsibilities of animal control officers and firearms. The MOU also requires such SPCA members to undergo criminal background checks, which include submitting urine samples for drug tests. In addition, the MOU requires any search warrant application relating to an investigation under Title 4 to be made through the Prosecutor's Office under the same procedures that govern any other search warrant application. The MOU prohibits an SPCA member who has qualified as an animal cruelty investigator from arresting any person without a warrant unless the Prosecutor's Office provides express authorization for the arrest. The MOU also requires any arrest within a residence to be made only in the presence of a uniformed, sworn law enforcement officer.
Finally, we conclude that the trial court erred in granting the State SPCA's application for a preliminary injunction revoking the Bergen SPCA's certificate of authority. Prosecutor Molinelli submitted a certification in response to the application which stated that the MOU "will, in my judgment, bring effective and appropriate controls for all law enforcement matters under Title 4 here in Bergen County." He also stated that "I have not been [made] aware of any situation where there has been an animal cruelty case in Bergen County that has not been handled by the local police department." In addition, Prosecutor Molinelli stated: "In the event that the Court `revokes' the Charter of the [Bergen SPCA], then the individuals that have agreed to abide by the terms of the aforementioned [MOU] will no longer have any law enforcement powers under Title 4 and will, therefore, be precluded from participating as an animal cruelty investigator in Bergen County under the MOU." Based on the County Prosecutor's assumption of responsibility for the enforcement of the animal cruelty laws in Bergen County, the agreement by a substantial number of Bergen SPCA members to become animal cruelty investigators in accordance with the MOU and the Prosecutor's certification that the revocation of the Bergen SPCA's certificate of authority could interfere with implementation of the *713 MOU, we conclude that the trial court abused its discretion in granting the State SPCA's application for a revocation of that certificate.
Accordingly, we reverse the preliminary injunction revoking the Bergen SPCA's certificate of authority and directing that all animal cruelty complaints in Bergen County be transferred to the State SPCA, and remand the case to the trial court.
NOTES
[1] A bill that would implement many of the Task Force's recommendations passed the Assembly on February 24, 2005. See Second Reprint of A.3186 (2005). The Senate has not taken any action on the bill.
[2] Since this action was filed, another person has been named president of the State SPCA.
[3] Prosecutor Molinelli's removal of the suspension of the Bergen SPCA's law enforcement functions as to members who join the Prosecutor's Animal Cruelty Task Force was formalized by a directive and memorandum issued to all Bergen County law enforcement officials on April 28, 2004.
[4] Because county prosecutors have broad statutory authority to supervise and control SPCA members' enforcement of animal cruelty law, we have no occasion to consider whether legislative delegation of law enforcement authority to an SPCA without such supervision and control would constitute an unconstitutional delegation of governmental authority to a private group. See Suss v. Am. Soc'y for the Prevention of Cruelty to Animals, 823 F.Supp. 181, 188-89 (S.D.N.Y.1993); Fox v. Mohawk & H.R. Humane Soc'y, 165 N.Y. 517, 59 N.E. 353, 355-56 (1901).
[5] This appeal deals primarily with the prosecutor's general supervisory authority over SPCA members who exercise law enforcement responsibilities under Title 4 and for that reason has not focused on any individual provisions of the MOU. Therefore, our opinion should not be read to uphold the validity of every provision of this document.