895 A.2d 1187

PASSAIC COUNTY PBA LOCAL 197, PASSAIC COUNTY PBA LOCAL 286, AND WAYNE PBA LOCAL 136, PLAINTIFFS–APPEL-LANTS, v. OFFICE OF THE PASSAIC COUNTY PROSECUTOR AND JAMES F. AVIGLIANO, PROSECUTOR, IN HIS OFFICIAL CAPACITY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 21, 2005—Decided April 24, 2006.

Before Judges WECKER, FUENTES and GRAVES.

*Loccke & Correia,* attorneys for appellants (*Merick H. Limsky,* of counsel and on the brief).

*James F. Avigliano,* Passaic County Prosecutor, attorney for respondents (*Steven E. Braun,* Chief Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Plaintiffs, three collective bargaining units representing certain law enforcement officers in Passaic County,[1] brought this action

---

[1] Plaintiffs' complaint states that members of Locals 197 and 286 are law enforcement officers employed by the Passaic County Sheriff's Department, and

alleging that the Passaic County Prosecutor violated the Attorney General's Law Enforcement Drug Testing Policy by ordering four county sheriff's officers and three Wayne police officers to provide urine samples for drug testing based upon reasonable suspicion of illegal drug use.[2] The Law Division judge granted the Prosecutor's motion for summary judgment and dismissed plaintiffs' complaint. Plaintiffs appeal that judgment. We now affirm, although on somewhat narrower grounds.

The Law Division judge initially noted that the individual, named officers all had withdrawn from the lawsuit, and thus no factual issue was before the court respecting reasonable suspicion to order each drug test. The sole question presented, as framed by the judge and agreed to by the parties, was:

> [W]hether the County Prosecutor had the authority, *absent the assent or request of the chief executive officer of the law enforcement agency by whom an officer within the county is employed,* to order reasonable suspicion drug testing of an individual officer not employed by the prosecutor's office?
>
> [Emphasis added.]

The judge answered that question in the affirmative and placed the reasons for his decision on the record following oral argument on January 11, 2005:

> It is apparent to this Court at least that a county prosecutor has the authority, absent the approval of the chief executive officer of the employing law enforcement agency, to order law enforcement officers, employed by a law enforcement agency within the county, to provide urine specimens for drug testing if there's reasonable suspicion of drug use pursuant to the Attorney General's Policy.

The judge concluded that the Prosecutor possessed such authority under the statute delegating to each county prosecutor the

---

members of Local 136 are law enforcement officers employed by the Wayne Police Department. Each local is the collective bargaining unit for its member in relation to their employing department.

[2] The Supreme Court upheld the constitutionality of an earlier provision for reasonable suspicion drug testing of law enforcement officers under the Law Enforcement Drug Screening Guidelines issued by the Attorney General on October 22, 1986. *Rawlings v. Police Dep't of Jersey City,* 133 *N.J.* 182, 627 A.2d 602 (1993).

Attorney General's authority, citing *N.J.S.A.* 2A:158–5.[3] The final order incorporated those reasons. We affirm the order granting summary judgment and dismissing plaintiffs' complaint. We do so, however, based on the actual consent of the chief executive officers involved here.

The Attorney General's Law Enforcement Drug Testing Policy [4] provides, at Paragraph III. C.:

1. Each municipal law enforcement agency shall include in its rules and regulations as defined in *N.J.S.A.* 40A:14–118,[5] and every county and state law enforcement agency shall include in appropriate standard operating procedures, a provision that individual law enforcement officers will be ordered to submit to a drug test when there is a reasonable suspicion to believe that the officer is illegally using drugs.

2. Before an officer may be ordered to submit to a drug test based on reasonable suspicion, the agency shall prepare a written report which documents the basis for the reasonable suspicion. *The report shall be reviewed by the county prosecutor or the chief executive officer of the law enforcement agency before a reasonable suspicion test may be ordered.* Under emergent circumstances, approval may be given for a reasonable suspicion test on the basis of a verbal report.

3. The agency's rules and regulations or appropriate standard operating procedures shall also provide that a negative result is a condition of employment as a sworn officer and that a positive result will result in: a) the officer's termination from employment; b) inclusion of the officer's name in the central drug registry

---

[3] *N.J.S.A.* 2A:158–5 provides:

> Each prosecutor shall be vested with the same powers and be subject to the same penalties, within his county, as the attorney general shall by law be vested with or subject to, and he shall use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws.

[4] The Policy as amended in June 2001 can be found at http://www.state.nj.us/lps/dcj/agguide/drugtest2001.pdf. Plaintiffs' Appendix includes the 1998 version, found at: http://www.state.nj.us/lps/dcj/agguide/drugscrn.htm. Both web pages were last viewed on April 7, 2006. Neither party suggests that there is any relevant difference between the two versions.

[5] *N.J.S.A.* 40A:14–118 establishes the power of each municipal governing body, "as an executive and enforcement function of municipal government," to create a police force "agency" and to provide for its governance; permits appointment of a chief of police and sets forth the duties and responsibilities of such official, including internal agency discipline; and defines the relationship between the governing body and its police force.

maintained by the Division of State Police; and c) the officer being permanently barred from future law enforcement employment in New Jersey.

4. The agency's rules and regulations or appropriate standard operating procedures shall further provide that officers who refuse to submit to a drug test based on reasonable suspicion after being lawfully ordered to do so are subject to the same penalties as those officers who test positive for the illegal use of drugs. [Emphasis added.]

The operative provisions of Paragraph III. C. 1. are that reasonable suspicion that any law enforcement officer is using drugs illegally triggers the officer's obligation to submit to a drug test, and that every law enforcement agency—municipal, county, and state—will enact rules and regulations so providing. Those provisions are not in dispute. The issue presented by this appeal arises from the second above-quoted paragraph of the Policy, Paragraph III. C. 2.

Plaintiffs contend that only an officer's employing agency is empowered to "prepare a written report which documents the basis for the reasonable suspicion"; such a report must be prepared "[b]efore an officer may be ordered to submit to a drug test based on reasonable suspicion"; and therefore the County Prosecutor cannot initiate the order for reasonable suspicion drug testing.

In this case, no written report of reasonable suspicion was prepared by any law enforcement agency, other than the Prosecutor's Office itself, before the Prosecutor's drug testing orders were issued to the individual officers involved in this case. The record includes, however, the Affidavit of James F. Avigliano, Passaic County Prosecutor, submitted in support of the Prosecutor's summary judgment motion. That affidavit referred to and attached an internal document dated August 19, 2004, entitled "Narcotics Task Force Investigation." The report described the circumstances of a Task Force Investigation focusing on a specific gym, located in Wayne, to establish "reasonable suspicion" justifying the August 19 drug testing orders that prompted this lawsuit. Although the affidavit stated that orders for "the drug tests in question" were consented to by the County Sheriff and by the

Wayne Police Chief, the judge declined to rule on the basis of such consent, but instead addressed the Prosecutor's power in the absence of consent.

The Prosecutor contends that the office's broad powers and responsibilities over law enforcement in the county, pursuant to *N.J.S.A.* 2A:158–4 and –5,[6] supersede the administrative provisions of the drug testing policy. The Prosecutor relies upon *State v. Winne*, 12 *N.J.* 152, 167–69, 96 *A.2d* 63 (1953), and *Gerofsky v. Passaic County SPCA*, 376 *N.J.Super.* 405, 416–17, 870 *A.2d* 704 (App.Div.2005), to support the claimed authority of the office. In *State v. Winne*, the Court reinstated an indictment charging the Bergen County Prosecutor himself with criminal nonfeasance in office for failing to "detect, arrest, indict and convict" allegedly known gambling operators as well as allegedly corrupt officials known to be involved in gambling operations. The indictment had been dismissed as insufficient because there was no allegation of corruption against the Prosecutor. 12 *N.J.* at 162, 96 *A.2d* 63 and *passim*. The inference suggested is that if the prosecutor can be criminally liable for failure to act respecting known criminal activity, especially on the part of public officials, then the prosecutor must have the power to do so. In *Gerofsky*, we upheld the County Prosecutor's "supervisory authority over all law enforcement activity in the county," including but not limited to "county and municipal ... police officers." *Gerofsky, supra*, 376 *N.J.Super.* at 417, 870 *A.2d* 704 (addressing the Prosecutor's authority over those members of the Society for the Prevention of Cruelty to Animals who had law enforcement responsibilities).

The Prosecutor also calls our attention to the Supreme Court's recognition that a police officer who is authorized to carry a gun, and who is involved with illegal drug use, poses a serious threat to public safety. *Rawlings, supra*, 133 *N.J.* at 189, 627 *A.2d* 602. The motion judge cited that threat in reaching his decision.

---

[6] *N.J.S.A.* 2A:158–4 provides: "The criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors."

Addressing the plaintiffs' argument that only a law enforcement officer's employing agency may initiate a drug testing order, the judge reasoned:

The Plaintiffs contend in this action that the County Prosecutor of Passaic County did not have the authority to order the reasonable suspicion drug tests because the tests were not directly ordered by the employer of the individual officers.

In enacting the Criminal Justice Act of 1970 [*N.J.S.A.* 52:17B–97 to –115], the New Jersey Legislature did establish a comprehensive statutory scheme or system for the administration of criminal justice throughout the State of New Jersey. Specifically, the declared purpose of the Act is "to secure the benefits of a uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State." *N.J.S.A.* 52:17B–98. The Act designates the Attorney General as the chief law enforcement officer of the State in order to enforce and administer the criminal justice system.

As required by the Act, a county prosecutor has the duty "to cooperate with and aid the Attorney General in the performance of his duties." *N.J.S.A.* 52:17B–112(a).

Further, the county and municipal police officers are required to cooperate with and aid the Attorney General and the county prosecutors in performance of their respective duties [referring to *N.J.S.A.* 52:17B–112(b).]

Similarly, pursuant to State statute, the Attorney General, as well as the county prosecutors, are given the exclusive jurisdiction over the "criminal business of the State." *N.J.S.A.* 2A:158–4.

In exercising the powers and duties involved, each prosecutor is vested with the same powers within his or her county as the Attorney General is by law, and he or she "shall use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *N.J.S.A.* 2A:158–5.

As recognized by the Appellate Division, and affirmed by the Supreme Court, those statutes give the Attorney General and county prosecutors plenary jurisdiction to prosecute all criminal matters in this State. It's clear from the wording in *N.J.S.A.* 2A:158–5 that the words "criminal business" are not limited to crimes, but include the prosecution of "offenders against the law." *State v. Downie,* 229 *N.J.Super.* 207, 209 n. 1, 550 *A.2d* 1313, (App.Div.1988), *aff'd,* 117 *N.J.* 450, 569 *A.2d* 242 (1990).

Accordingly, the Attorney General, as chief law enforcement officer of the State is responsible for the general administration of criminal justice in the State. Similarly, a county prosecutor, as chief law enforcement officer of his or her jurisdiction, is vested with coexisting authority and responsibility over the general administration of criminal justice in his or her respective jurisdiction.

There is case law which delineates the function and authority of the county prosecutor in the criminal justice system. Generally, in a county the prosecutor is the foremost representative of the executive branch of government and the enforcement of criminal law. *See State v. Winne,* 12 *N.J.* 152, 96 *A.2d* 63 (1953).

The judge also reasoned that because both the "chief executive officer" of the local law enforcement agency and the County Prosecutor are equally empowered to review a written report of reasonable suspicion before a drug test is ordered, and even a verbal report can be approved when the circumstances are emergent, the Prosecutor must have the power to initiate a reasonable suspicion drug test order. Continuing, the judge concluded:

> It is clearly reasonable that, in most instances, the report documenting the reasonable suspicion would be prepared by the agency employing that officer and subsequently reviewed by the chief of that agency. However, there is nothing in the Attorney General's policy to indicate that one within the county prosecutor's office is without the authority to prepare the requisite report to be reviewed by the county prosecutor.
>
> Again, although it may seem more likely that the chief of the officer's agency would approve the order of a urine sample, the provision expressly provides that the county prosecutor may serve as the approving authority.
>
> While there's no doubt that a municipal police department and/or a county sheriff's department qualify as a law enforcement agency, it follows that a county prosecutor's office must be similarly deemed a law enforcement agency required to undertake reasonable suspicion drug testing under the Attorney General's Policy.

After referring to the County Prosecutor's statutory obligation to enforce the criminal law and administer the criminal justice system within the county, citing *N.J.S.A.* 52:17B–98 and *N.J.S.A.* 52:17B–112(a), the judge described a variety of situations that would, as he saw it, virtually require the County Prosecutor to act without waiting for a local agency's report: for example, if the local agency chief either was unaware or consciously disregarded suspicious drug use, or if a county-wide investigation required action crossing municipal borders, or if the local chief herself or himself was under suspicion. In such cases, apparently taking judicial notice of the speed at which drugs metabolize in the body, and the resulting need for fast action to accomplish meaningful drug testing, the judge concluded that "the county prosecutor would clearly have such authority." We agree.

Finally, while recognizing the lines of administrative authority between municipal civilian officials and law enforcement chief executives as defined by *N.J.S.A.* 40A:14–118, the judge reasoned that no statute provides that the supervisory power of "various

civilian entities in county and municipal government supersedes the authority of the Attorney General or the County Prosecutor as his alter ego to supervise the administration of criminal justice."

The judge explicitly rejected the argument that an employer-employee relationship was a prerequisite to initiating an order for testing under the Policy. Summarizing his decision, the judge concluded:

And, it's clear to me, that where the employing agency does not act, or where the prosecutor deems it necessary to act expeditiously for fear of either tipping off the suspects, or for fear that the drugs would be metabolized, or where you are dealing with a countywide problem or multi-jurisdictional problem, the prosecutor, as the alter ego of the Attorney General, and chief law enforcement officer of the county, can order reasonable suspicion drug testing, even absent a request by the employer or the appointing authority or chief authority of that police department requesting that to be done.

To hold otherwise would thwart the ability of the chief law enforcement officer of the county—as the alter ego of the Attorney General—to act for the benefit and protection of the public, and to act quickly and expeditiously wherein, indeed, reasonable suspicion does exist, which is the assumption here in this whole argument and decision.

The specific facts that triggered the Prosecutor's reasonable suspicion in these cases, and the drug testing orders that followed, are not in issue.

Here, where the Wayne Police Chief and the Passaic County Sheriff apparently did consent to the Prosecutor issuing these orders,[7] we find no reason to go beyond the facts presented. Our decision therefore is limited to holding that the Prosecutor has the power to initiate and issue drug testing orders to law enforcement officers within the county, based upon reasonable suspicion under the Attorney General's Law Enforcement Drug Testing Policy, *either* when one of the unusual conditions referred to by the motion judge exists, *or* when, as here, the chief law enforcement officer in the affected jurisdiction consents to the County Prosecutor initiating the order. We caution that while the County Prosecutor has such power under the Policy, we see no basis for its

---

[7] Plaintiffs did not dispute the Prosecutor's Affidavit in support of summary judgment, in which he attested to the consents.

routine exercise. Rather, it should be the unusual case where the Prosecutor initiates drug testing orders without the prior consent of the local police chief or county sheriff, or other extenuating circumstances.

Affirmed.